WILLIAM J. ZICKEL v. OTTO A. KNELL, SR., MRS. OTTO KNELL, SR., Doing Business as O. A. KNELL COMPANY, Appellants.—No. 40396. —210 S. W. (2d) 59.

Division One, March 8, 1948.

Rehearing Denied, April 12, 1948.

*Lee, Fricke & Lee* for appellants.

*Douglas H. Jones* and *Berthold, Jones & Bialson,* for respondent.

[60] HYDE, J.—Action for dissolution of a partnership agreement, accounting to determine profits and plaintiff's share therein, and for receiver pendente lite. Plaintiff alleged that more than

$3932.00 was due him. Defendants denied the existence of a partnership, stated a first counter-claim for $3384.66, claimed to be due them from plaintiff; and stated a second counter-claim for malicious prosecution for $50,000.00 actual and $25,000.00 punitive damages. The court found that a limited partnership or joint adventure existed between plaintiff and defendants Mr. and Mrs. Otto A. Knell, Sr. (hereinafter referred to as defendants); and that there was due plaintiff from them $3987.56 for which judgment was entered in his favor; but that defendant Otto A. Knell, Jr. was not a partner and entered judgment in his favor. Defendants' counter-claim for malicious prosecution was dismissed. Defendants have appealed.

Defendants' malicious prosecution counter-claim was based on the filing of this very action by plaintiff against them. Defendants say that this was a mandatory counter-claim under Section 73 of the Civil Code (Sec. 847.73, Mo. R. S. A.; Laws 1943, p. 377), contending that "it arises out of the transaction or occurrences that is the subject matter of the opposing party's claim," and is a claim which they then had against plaintiff.

Defendants' contention is incorrect because no cause of action for malicious prosecution for the filing of this action by plaintiff then existed, or does now exist, or could ever accrue to defendants until this suit terminated in their favor. [Ripley v. Bank of Skidmore, 355 Mo. 897, 198 S. W. (2d) 861; Niedringhaus v. Zucker, No. 40617, 208 S. W. (2d) 211 (decided in Div. No. 2, February 9, 1948) and cases cited.] Section 73 is only a procedural statute and it does not change the substantive law as to what constitutes a cause of action or when it accrues. Therefore, the court's action in dismissing this counter-claim was correct.

Plaintiff claimed to have made an agreement with defendants in December 1941 to take charge of the commercial department (supplying business offices and industrial establishments) of their floor covering business. Defendants did both commercial and domestic (private residence) floor covering and their salesmen of domestic coverings worked on salaries only. Plaintiff was the only person selling commercial coverings and no one else got a share of the profits. Plaintiff said he was a partner in that department which he operated. He said he was to get $35.00 per week salary and 20% of the net profits, with three cents per mile for the use of his car. Plaintiff worked with defendants during 1942, 1943 and 1944; but opened his own business January 1, 1945. He made contracts for jobs but had nothing to do with the installation of these jobs. He set up a system of accounting for this business which would show complete costs on each job but the books were kept by defendants' bookkeeper. He said there was an accounting between the parties in April 1942, showing thirteen completed contracts of $9248.05 on which commissions amounted to $371.43; but that defendants only paid $200.00 at

that time. He said that he was never able to get another accounting, but that small payments ($50.00 or $100.00) were made to him when he asked for settlement. Two checks were returned marked "insufficient funds." He was never able to get the complete and accurate costs on the contracts he made after April 1942. Plaintiff did receive $35.00 weekly, as well as the three cents per mile for use of his car which was paid to him on his weekly statements. Plaintiff claimed to have obtained 150 contracts with total sales amounting to $138,560.00. He figured the profits at $37,413.00 making his share $7,482.60. He said he had received $3,468.00 leaving the balance due him $4014.60.

Defendants claimed that plaintiff was only an employee. Their figures on total sales were $137,972.31; but they claimed that the profits, after deducting plaintiff's automobile expense, were $27,852.31. Plaintiff claimed that this automobile expense was not to be deducted from the profits but was to be paid to him in addition to [61] his share of the profits. However, the principal difference between the parties was that defendants claimed that the $35.00 per week paid to plaintiff was not salary but only a drawing account against his share of the profits and that it also was to be deducted from the amount of profits due him. They said that his share of the profits amounted to only $5,570.40 and that they had paid him $8,955.06. Therefore, they claimed that plaintiff owed them $3,384.66. They stated this claim in their answer, and also as their first counterclaim, and asked judgment against plaintiff for this amount. Defendants also denied that plaintiff was a partner in their business or any department thereof. Defendants' evidence was they had no departments in their business and that whatever money was made on plaintiff's sales was used in their general business. However, Mrs. Knell said that they lost money on some jobs and these losses were charged against plaintiff; and that he shared in the profits and losses from that particular business that was written by him. Defendants' evidence also showed that some jobs ran two years or more before the contract was finished and paid; and there would be losses and extra expense that were not considered in the original estimates. Defendants' records showed that his estimates of profits at the time the contracts were made totaled $32,030.27, but actual profits figured after the jobs were completed were $28,631.03.

The Court found (in findings of fact) that defendants and plaintiff entered into a limited partnership or joint venture agreement to promote and develop a commercial line of floor coverings in connection with defendants' then established business, and that plaintiff was to receive a definite salary of $35.00 per week, plus a commission of 20 per cent of the profits realized on the business produced by plaintiff, plus automobile expense of three cents per mile. The Court further found that plaintiff entered into work and produced a large

and profitable amount of business, but that defendants failed and refused to make an accounting of their profits on said business; that plaintiff was denied the privilege of inspection of the books and records relating to the actual expenses and profits derived from his portion of the business; that defendants used the profits obtained from plaintiff's portion of the business in the general expense of defendants' general business and for the payment of debts and obligations incurred prior to plaintiff's association in such business; and that plaintiff is not indebted to said defendants for any sum whatever. The Court also reached the conclusions of law that from the "agreement and subsequent conduct of the parties a partnership or joint adventure relation arose which carried with it the obligation to participate in the payment of losses; that losses were charged by defendants against plaintiff and consented to by him"; that "an accounting was necessary to determine plaintiff's share of the profits obtained by said defendants from such joint venture"; and that "the partnership or joint venture agreement existing between all of said parties should be wound up and terminated and dissolved and that plaintiff should be paid the balance found to be due him after an accounting." The Court made the following findings determining the amount remaining due to plaintiff:

Defendants received a total sum on contracts sold by
    plaintiff amounting to ........................... $137,972.30
On which business said defendants realized a net profit
    amounting to ............;...................... 28,584.66
That plaintiff was entitled to receive twenty per cent of
    such net profits or the sum of ................... 7,466.60
That said defendants have distributed to plaintiff and
    plaintiff has received on account thereof the sum of 3,478.44
Leaving a balance still due and unpaid, owing by said
    defendants to plaintiff, in the sum of ............ 3,987.56

Judgment was entered for plaintiff for $3,987.56; and this finding and judgment necessarily disposed of defendants' first counter-claim.

Defendants contend that there was no competent evidence to support the judgment and decree and say that there was no showing whatever of any ground for relief in equity. They claim plaintiff's suit was to recover a debt in a fixed amount [62] on which they were entitled to a trial by jury. Defendants cite Dahlberg v. Fisse, 328 Mo. 213, 40 S. W. (2d) 606; Myers v. St. Louis Structural Steel Co., 333 Mo. 464, 65 S. W. (2d) 931; and Wilson v. Hoover, 342 Mo. 1182, 119 S. W. (2d) 768. In the Myers case, we held that the petition, seeking to hold defendant liable as a partner, did not state a cause of action because the facts stated showed only a relation of contractor and sub-contractor. The Dahlberg case did not involve any claim of partnership, while the Wilson case involved the right of contribution between partners of a dissolved partnership in which

the partners had previously struck a balance. Thus in both cases a fixed amount was involved.

However, in the Dahlberg case, we said: "The best considered authorities put equitable jurisdiction for an accounting upon three grounds, to wit: The need of a discovery, the complicated character of the accounts, and the existence of a fiduciary or trust relation. The relief which is given in this action is an accounting and a judgment for the balance found due on taking the account. 1 C. J. 613, sec. 56. The basis of equity jurisdiction in accounting is the inadequacy of a legal remedy." We think the evidence here was sufficient to show a basis for relief in equity. To determine the amount due plaintiff, either on the basis of his version of the agreement or defendants', it was necessary to determine the profits on about 150 separate contracts bringing in gross proceeds of about $138,000.00 over a period of three years. This required an examination of the books kept by defendants which plaintiff had not been permitted to see. Defendants' books showed the complete costs on these contracts and the profits could not be determined without them. Plaintiff had only costs sheets that he prepared from estimates and the various materials that would be used in connection with the jobs. Final costs were determined from invoices from supply houses and work tickets turned in by workmen who made the installations, and other actual cost items Plaintiff had the exact profit on only a limited number of contracts (the first thirteen) and estimated profits on the others on the basis of the average of these. Thus there was clearly a need for discovery and the complicated character of these accounts is self-evident.

Defendants contend that there was no fiduciary relation shown. The court found a joint venture in the nature of a partnership relation which would, of course, be sufficient. [Neville v. D'Oench, 327 Mo. 34, 34 S. W. (2d) 491.] However, regardless of whether or not the evidence was sufficient to support such a finding, which we do not decide, there certainly was at least a sufficient relationship as principal and agent, with funds belonging to one party collected and held by the other, to establish a fiduciary relationship between them under the circumstances of this case. The rule is stated that, while "the relation of principal and agent is of itself insufficient to entitle the agent to maintain a bill in equity for an accounting," nevertheless "such a bill may be maintained where the relation between the parties is of a fiduciary character or the transactions between them are so involved and complicated that the remedy at law is insufficient to administer complete justice." [3 C. J. S. 228, Sec. 294, p. 229, Sec. 297; See also American Button Co. v. Weishaar (Mo. App.), 170 S. W. (2d) 147; State ex rel. Cockrum v. Southern, 229 Mo. App. 749, 83 S. W. (2d) 162; Williams v. Finlaw, Mueller & Co., 292 Pa. St. 244, 141 Atl. 47; 2 C. J. 892, Sec. 588 and cases

cited in note 73; 2 Am. Jur. 231, Sec. 293; A. L. I. Restatement of Agency, Sec. 436, comment c.] In Williams v. Finlaw, Mueller & Co., supra, the Supreme Court of Pennsylvania, in affirming an accounting decree for an agent against his principal, said: "where the effective working of the agency contract and the conduct of the parties necessarily imposes a trust relation on the principal, who is in receipt of a sum of money coming from numerous sources, as in a case where the agent's salary depends upon the profits, equity will order an accounting." We think this rule is applicable in this case, because plaintiff's compensation depended on the profits of the business, defendants collected all of the money due on the contracts plaintiff sold, defendants paid out of this money all of the expense of completing these contracts, [63] including cost of materials, labor, freight and delivery charges, and allocated other expenses to it proportionately with their domestic and retail business such as social security payments and insurance, and these profits could not be accurately determined except from defendants' books and records. We, therefore, hold that the equitable action of accounting was a proper remedy.

However, the amount of the judgment rendered seems to be based on a miscalculation in the findings of fact herein above set out. The Court found therein that, on the business plaintiff procured, defendants realized a net profit of $28,584.66. This was the exact amount of the profit shown from defendants' books and records as appears from defendants' exhibits C to K inclusive, without deducting plaintiff's automobile expense. The findings of fact state "that plaintiff was entitled to receive 20% of such net profit, or the sum of $7,466.60," while 20% of that amount would actually be $5,716.93. The Court also found that plaintiff had received on such commissions, exclusive of his $35.00 per week salary, the sum of $3,478.44. This would leave a balance due plaintiff of $2,238.49. Furthermore, defendants' books show that plaintiff was paid $8,955.06. We do not understand that plaintiff contends that this amount is incorrect. Plaintiff was entitled to $5,460.00 salary (156 weeks at $35.00 per week) for the three years. 20% of the profits $5,716.93 added to $5,460.00 would be $11,176.93, which would be the total amount due plaintiff exclusive of the automobile expense he received. $8,955.06 subtracted from this amount would be $2,221.87. (Likewise $8,955.06 less $5,460.00 is $3,495.06 which would be the excess of salary payments to be credited on the profits due; and $5,716.93 less $3,495.06 is $2,221.87.) From our examination of the whole record, we find that the correct amount for which plaintiff is entitled to judgment is $2,221.87.

The judgment is reversed and the cause remanded with directions to enter judgment for plaintiff for that amount. All concur.