Howard PATTERSON and Alice Dorris Patterson, Plaintiffs-Respondents,

v.

FITZGIBBON DISCOUNT CORPORATION, a corporation, Easton-Taylor Trust Company, a corporation, and Ralph Jacobson d/b/a Shamrock Motor Sales, Defendants.

Fitzgibbon Discount Corporation, a corporation, Defendant-Appellant.

No. 30423.

St. Louis Court of Appeals.

Missouri.

Sept. 20, 1960.

Sidney Rubin, St. Louis, for defendant-appellant.

Alan C. Kohn, St. Louis, for defendant Easton-Taylor Trust Co.

A. Courtney Davis, St. Louis, for respondent.

BRADY, Commissioner.

On September 22, 1958, the FitzGibbon Discount Corporation, hereinafter called appellant, obtained a default judgment against the respondent, Howard Patterson, in the magistrate court of the City of St. Louis, in the amount of $1,355.02. This action was brought in the circuit court on November 20, 1958, to set aside that default judgment. Originally, the action was against the appellant; one Ralph Jacobson, d/b/a Shamrock Motor Sales; and the Easton-Taylor Trust Company. Appellant's motion to dismiss was overruled, as was that of Easton-Taylor Trust Company, hereinafter referred to as Easton-Taylor. Answers were filed and trial was held as to them. During trial, the respondents dismissed their cause of action as to Jacobson.

The petition filed by the respondents recited the magistrate court proceedings and judgment, stating that " * * * service of summons was served upon Alice Dorris Patterson, wife of Howard Patterson, * * * *"; that Howard Patterson had no knowledge of the judgment until the garnishment of his bank account, which took place after expiration of time for appeal; that " * * * due to mistake, accident and inadvertance (sic), his wife, upon whom the summons was served, placed said summons about the home and failed to tell him about it or show him the same, so that he did not know of its importance and content, and that as a result said default judgment was rendered against him as a result of said mistake, accident and inadvertance (sic)"; that appellant knew there was no consideration for the note and chattel mortgage, and thus was not a "bona fide purchaser for value or holder in due course"; that Jacobson had paid all or part of the amount due on the note and chattel mortgage; that respondent Howard Patterson has a meritorious defense to the magistrate court action, and that his default was not due to any lack of diligence or fault on his part in failing to defend; that the magistrate court judgment was unjust, inequitable, and unconscionable and the result of mistake, misfortune, accident and inadvertence; that Jacobson was a party to this action when he could not have been a party in the magistrate court because respondent Howard Patterson's defense was in the nature of an equitable defense or such a defense as he could not avail himself of in a magistrate court; that respondent did not have an adequate remedy at law; that respondent will suffer irreparable injury by the enforcement of the magistrate court judgment because of an execution and writ of garnishment issued against both of his bank accounts at Easton-Taylor, whereas all of said money in those accounts is the money of respondent Alice Dorris Patterson. A decree was prayed setting aside the magistrate court judgment, enjoining any further action under the present execution and garnishment, quashing the present execution and garnishment, for damages, and for any other and further relief as deemed just and proper.

The evidence by the respondents and Jacobson was that Mrs. Patterson testified that she was a teacher; that she was asked if Mr. Patterson was home and handed the "paper" and told it was a court summons; that she did not read it, being threatened at the time with a miscarriage, but put it on the dresser under a scarf; that at that time they lived upstairs in a 4-family flat; that this took place in the daytime and her husband came home later that evening; that some letters came to the house one day and she knew through them that her husband was having some type of controversy with appellant; that she had asked him about it and that he told her it was taken care of and not to worry about it; that letters came several times but that after the first time she never discussed it with her husband but merely "put them aside"; that she never gave the summons to her husband nor discussed it with him, and that the first she knew the appellant had a judgment

against her was when the bank account, containing her money received for teaching, was garnisheed. On cross-examination, Mrs. Patterson testified again that the man at the door told her the paper was a court summons; that she knew the significance of that but due to her condition—she had been having dizzy spells and sick fainting spells—she had overlooked these papers; that these papers were served on August 29th and she was ill until January of the following year, when she had a miscarriage with resulting necessary surgery. The evidence as to the manner in which the money was deposited in the Easton-Taylor Trust Company and how respondent carried on the business is not pertinent at this point.

Howard Patterson testified that the first he knew of the judgment in the magistrate court was when he got a letter concerning the garnishment; that his wife never gave him any paper that was left with her; that he did not owe appellant any money, nor had he received any property from it; that he never received any money or property from Jacobson; that he did sign the note and chattel mortgage; that he did so because he had planned to buy an automobile from Jacobson, but Jacobson never had it ready; and that he tried to get the note and chattel mortgage back but could not; that he has never paid anything on the note; that it was entirely due to the fact that his wife never gave him the papers served on her that he did not defend the magistrate court action; that he never appeared in the magistrate court, the judgment being by default. On cross-examination, he testified that he signed this note along with some other papers with the understanding that if his "credit doesn't go through", then the note was no good; that the amount was filled in on the note when he signed it.

Jacobson testified that he was engaged in the automobile used car business; that he wrote a deal on an automobile to Mr. Patterson, but did not actually sell him one; that Patterson gave him a note and chattel mortgage and a $50 deposit on a 1955 Plymouth Sedan, and that when the deal was not completed he returned the $50 deposit; that he negotiated the paper to appellant; that he did not recall what amount the note was originally for; that when Patterson signed the note it was not filled out, and neither was the chattel mortgage; that he never filled either in and did not know who did; that all his books and records were lost in the tornado which hit St. Louis shortly before; that he had been dealing with appellant four or five years and during that time averaged 300 deals a year, totalling between $200,000 and $300,000; that Patterson never paid him anything on the note, and what money was paid to appellant came from him without any reimbursement from Patterson; that following Patterson's signing the note and Jacobson taking it to appellant for discount, Jacobson went to appellant and told "him" that he didn't sell the car to Patterson and "to pull the car off"; that FitzGibbon told him: "I will tell you what to do: for the time being, we will set it aside. You make a payment on it now, to keep it up to date. I will put it over on your floor plan and, when you resell the car, you give me another deal on it to overcome the note Mr. Patterson signed here"; that this is the way it was worked out, and appellant knew Patterson did not get an automobile; that appellant's auditing department sent notices to every account and knew exactly who had a car and who didn't, there being some ten different people involved in similar transactions; that Mr. FitzGibbon of the appellant corporation knew no automobile was involved the day after Patterson was supposed to take delivery, and knew when the magistrate court action was filed that Patterson had received no title nor anything at all for the note; that it was over a year after appellant obtained this knowledge that it filed suit. On cross-examination, Jacobson testified that he took the note to appellant and that he did get some credit on some old repossession accounts or some money for the note, he wasn't sure which; that at that time Mr. FitzGibbon of the appellant corporation did

not know no delivery and no sale had been made; that he first knew this three days after the note was negotiated to the appellant; that he negotiated the note under a full re-purchase deal.

The appellant offered no testimony, nor did Easton-Taylor. At the close of respondents' case, appellant and Easton-Taylor renewed their separate motions to dismiss made earlier and were again overruled.

The trial court made certain findings of fact and conclusions of law. The appellant contends that the findings of fact made by the trial court that Mr. Patterson executed a note and chattel mortgage in blank and that the note and chattel mortgage were in blank when they were negotiated to the appellant FitzGibbon Discount Corporation, and the credit given by that corporation to Jacobson in payment therefor are not supported by the evidence and constitute prejudicial error. The trial court made its conclusions of law as follows: (A) that the court had jurisdiction of the parties and subject matter; (B) that the respondents had no adequate remedy at law; (C) that respondent Howard Patterson had no actual knowledge of the magistrate court proceeding until more than ten days after the judgment was entered in that proceeding; (D) that the respondent Howard Patterson had shown prima facie that he had a meritorious defense against the magistrate court action; (E) that the respondent Howard Patterson was deprived of the opportunity to present his defense through "accident, mistake, inadvertence, chance and unavoidable circumstances, unmixed with negligence or inattention on his part"; (F) that the respondents are entitled to judgment. Appellant contends conclusions of law B, C, D and E constitute prejudicial error. Timely motion for new trial by the appellant was overruled, and their appeal followed. The respondents have not filed a brief. Easton-Taylor is not an appellant.

A case upon strikingly similar facts is Cherry v. Wertheim, Mo.App., 25 S.W.2d 118, a case by this court in 1940. On the question of an adequate legal remedy, this court said, at loc. cit. page 120:

"In these circumstances, with a view to the setting aside of such judgment and the reopening of the case, plaintiff not only had no adequate remedy at law, but, in fact, he had no remedy at law whatsoever, for neither of the statutory modes of review was available to him as a means of affording redress for the misfortune that had befallen him. The statutory modes spoken of, which provide for the vacation of a judgment after the term at which it was rendered, both contemplate the filing of petitions for review; the first method being covered by sections 1532–1535, R.S.1919, and the second by sections 1550–1552, R.S.1919.

"In holding that plaintiff was in no position to avail himself of either of the statutory methods, suffice it to say of the first (which falls under sections 1532–1535, R.S.1919) that it has been expressly held not to authorize the vacating or setting aside of a final judgment at a subsequent term on a petition for review, where, as here, personal service was had upon the defendant. State ex rel. Fabricio v. Trimble, 309 Mo. 415, 274 S.W. 712; Boas v. Cliffdale Land & Farm Co. (Mo.Sup.) 193 S.W. 806; Boggess v. Jordan (Mo.App.) 283 S.W. 57; Mattocks v. Van Asmus, 180 Mo.App. 404, 168 S.W. 233. We appreciate that, if the service had been constructive, a different situation would prevail (Osage Investment Co. v. Sigrist, 298 Mo. 139, 250 S.W. 39); but, since *it was concededly lawful personal service, the construction put upon the statutes must here obtain.*

"Nor is plaintiff in a situation where he may have recourse to a petition for review under sections 1550–1552, R.S. 1919, for such sections contemplate a motion or petition based upon an irregularity patent on the face of the record,

and not falling within any one of the fourteen exceptions noted in section 1550. Jeude v. Sims, 258 Mo. 26, 166 S.W. 1048; Shuck v. Lawton, 249 Mo. 168, 155 S.W. 20; State ex rel. [Potter] v. Riley, 219 Mo. 667, 118 S.W. 647; Stulz v. Lentin, 220 Mo.App. 840, 295 S.W. 487; Boggess v. Jordan, supra. Here the record is in proper form, with personal service not only shown but actually had; and, since the ground of plaintiff's complaint goes to a matter which requires proof dehors the record, it is apparent that no petition for review would have afforded him a remedy under such sections." (Emphasis supplied.)

■ It is obvious that proof in this case must be dehors the record as it was in the Cherry case. See Ruckman v. Ruckman, Mo.App., 337 S.W.2d 100, opinion dated July 5, 1960. The service in this case, being by the same manner as in the Cherry case, is personal service. Sections 1532–1535, R.S.Mo.1919, are now Sections 511.170–511.200 RSMo 1949, V.A.M.S., and Sections 1550–1552, R.S.Mo.1919, are now Sections 511.250–511.270 RSMo 1949, V.A.M.S. See State ex rel. Fabrico v. Trimble, 309 Mo. 415, 274 S.W. 712; Force v. Margulius, Mo.App., 33 S.W.2d 1023.

■ It follows there is no adequate remedy at law, and an action in equity will lie.

■ The rule is that where a party litigant has been deprived of an opportunity to present a meritorious defense to a cause by reason of accident, mistake, inadvertence, mischance or unavoidable circumstances unmixed with neglect or inattention, a court of equity will vacate a default judgment and give such injured party an opportunity to present his defense to a jury. Cherry v. Wertheim, supra; Boeckmann v. Smith, 238 Mo.App. 855, 189 S.W.2d 449. It is obvious from a mere statement of the rule that two things must be present before equity will interfere. These are that there must be a prima facie showing of a meritorious defense and there must have been an accident, mistake, inadvertence, mischance, or unavoidable circumstance which prevented the party from presenting that defense. Both factors must be present and if either is absent the equity action will not lie. In this case we will not inquire into whether or not the facts as shown by this record can be held to constitute an accident, mistake, inadvertence, mischance, or unavoidable circumstance, for it is clear that there was no prima facie case of a meritorious defense made.

Section 401.052 RSMo 1949, V.A.M.S. reads as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. (R.S.1939, § 3067)"

All of these elements are present in this case. There is no controversy in the evidence that the appellant gave value to Jacobson for the note. While Jacobson did not testify that he had received any money from appellant for the note, he did testify that he received something for it in the form of credit on some old accounts he had with appellant. One who takes a note in payment of a debt or as collateral therefor may be a holder in due course. Batson v. Peters, Mo., 89 S.W.2d 46, loc. cit. page 52. It is also clear that at the time Jacobson negotiated the note to appellant, appellant had no notice of any infirmity in the instrument or defect in Jacobson's title. That is

to say, under these facts, he had no notice that Jacobson had in fact given no consideration for the note. Section 401.056 RSMo 1949, V.A.M.S., sets forth what constitutes notice of an infirmity and reads:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith. (R.S. 1939, § 3071)"

Under the uncontradicted testimony, the appellant did not come into knowledge of that fact until three days after the note had been negotiated and credit given to Jacobson.

■ The only element necessary to be present before the appellant can be considered a holder in due course about which there is any contradiction in the evidence is whether or not the note was complete and regular upon its face at the time it was negotiated to appellant. In this respect, Jacobson's testimony was that he did not fill in the note although nowhere in his testimony does he state that when the note was negotiated to the appellant, it was not filled in. However, we must disregard Jacobson's testimony on this point, for Mr. Patterson's testimony was that the note was filled in when he signed it. In Partney v. Agers, 238 Mo.App. 764, 187 S.W.2d 743, at page 747, we said that "* * * Any statement against interest made by a party absent a reasonable explanation avoiding it must be taken as true." There were no further questions relative to the condition of the note when Patterson signed it, nor was there any attempt by redirect examination to show that Patterson had been mistaken in his answer that the note was filled in. Therefore, it must be taken as true that when Patterson signed the note it was filled in and, of course, it was filled in when it was negotiated, since that event took place after the signing.

The factual situation shown in this case therefore substantiates, by the respondent's own evidence as offered by himself and his witness Jacobson, that the appellant was a holder in due course of the note in evidence.

This conclusion compels the reversal of the trial court's decision in this case, for the reason that the meritorious defense which the respondents stated in their petition that they had in this case and were prevented from presenting, i. e., the lack of consideration for said note, is unavailing as to a holder in due course.

Section 401.057 RSMo 1949, V.A.M.S., reads as follows:

"A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon. (R.S.1939, § 3072)"

It follows that there was not a prima facie case of a meritorious defense made by the respondents.

The judgment will be reversed and the cause remanded to the trial court with instructions to enter its judgment in accordance with the views herein expressed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of Brady, C., is adopted as the opinion of the court. The judgment is therefore reversed and the cause remanded to the trial court with instructions to enter its judgment in accordance with the views herein expressed.

WOLFE, P. J., RUDDY, J., and JAMES D. CLEMENS, Special Judge, concur.

ANDERSON, J., not participating.