Thomas W. McMAHON, Jr., Plaintiff-Appellant,

v.

The MAY DEPARTMENT STORES COMPANY, Defendant-Respondent.

No. 49938.

Supreme Court of Missouri,

Division No. 1.

Dec. 9, 1963.

Rehearing Denied Jan. 13, 1964.

**84**

Edward O. Hancock, St. Louis, for appellant.

George E. Lee, St. Louis, Carter, Bull, Baer, Presberg, Lee & Stanard, St. Louis, of counsel, for respondent.

ROBERT R. WELBORN, Commissioner.

This lawsuit arose out of a default judgment obtained by The May Department Stores Company against appellant Thomas W. McMahon, Jr. and a garnishment issued in aid of execution upon such judgment. The judgment in the original action was for merchandise sold by Famous-Barr Company, the name under which May does business in St. Louis, to the appellant's former wife subsequent to their divorce. The petition in the present case is in three counts. In Count I appellant sought to set aside the default judgment on the grounds that it had been procured through a fraudulent return of service made by an employee of respondent. In Count II he asked $5,000 actual and $25,000 punitive damages alleged to have been suffered "by reason of defendant by its attorneys, agents and employees making, aiding and abetting a false return and obtaining said judgment." In Count III he sought the same amount of damages for the action of respondent in "wrongfully ordering garnishment proceedings in an effort to collect the judgment based upon said false return."

Count I was tried by the court which found the issues against the appellant. Finding that Counts II and III were dependent upon appellant's prevailing in Count I, the court entered judgment against the appellant on all three counts. This appeal is from such judgment. In view of the amounts sued for, we have jurisdiction of the appeal.

Appellant and his wife Marion opened a charge account at Famous-Barr Company in October, 1956. At that time they resided at 1521 Oriole Lane in St. Louis. In May, 1958, they moved to 8610-a Frost Avenue in Berkeley, St. Louis County. One charge plate issued in connection with the account in the name of Mrs. Tom W. McMahon.

In May, 1959, appellant and his wife separated and he moved to his parents' residence at 7828 Stanford in University City. Marion continued to live at 8610-a Frost until sometime in March, 1961. On June 2, 1959, she filed suit for divorce in the St. Louis County Circuit Court. Near that date a statement was received by appellant from Famous-Barr showing $43.44 owed on the account as of May 17, 1959. Appellant asked his father to pay Famous-Barr this amount on his behalf and he did by check dated June 8, 1959. According to appellant's father, he told the person to whom he gave the check that "the account was closed as of this date." Appellant stated he also addressed a letter to Famous-Barr stating that the account was closed, that he and his wife were separated and that he would pay no more on it. Such letter was not found in Famous-Barr's files. Appellant also said that he told his wife the account was closed and that she would get in trouble if she should attempt to use it. However, he made no effort to obtain the charge plate from her.

A divorce was granted Marion on January 28, 1960. Between the time of the separation and the divorce the Famous-Barr account had been inactive. However, beginning in January, 1960, Marion began to make purchases which were charged to the account. The charge plate was used and she signed the charge slips for the purchases, "Mrs. T. W. McMahon." As the balance due on the account increased without payment being made, employees in the credit department of Famous-Barr made efforts to obtain payment. Various form letters concerning the account were sent. On June 2, 1960, Mrs. McMahon told an employee of Famous-Barr in a telephone conversation that she had been in the hospital for a week and had been unable to get the bill straightened up. She stated that she would send a check next week. Be-

tween May 17 and July 17, payments of $30.00 were made on the account. When no further payment was received, additional letters were sent to the Frost Avenue address. To whom the letters were addressed does not appear. In November, 1960, the account was turned over to Mr. Frank, an attorney employed by Famous-Barr.

Famous-Barr's records showed that, in a telephone conversation on November 17, 1960, Mrs. McMahon informed Gertrude Niehoff, a telephone collection clerk employed by Famous-Barr, that she was divorced, that she was responsible for payment of the account and would pay the bill. She also stated that she would return the charge plate. However, no payments were made and, on December 15, 1960, Frank filed suit on behalf of respondent against Thomas W. McMahon, Jr. and Mrs. Tom W. (Marion) McMahon, Jr. for $184.26, the balance due on the account as of November 17, 1960. The petition filed in the Second District Magistrate Court for St. Louis County showed the address of defendants as 8610-a Frost Avenue, Berkeley. Summons issued January 5, 1961, returnable February 3, 1961, and was placed in the hands of a deputy constable. After making three or four visits to the Frost Avenue address and finding no one there and after being informed by someone in the building that the McMahons had moved, the constable made a "not found" return. On March 7, 1961, a telephone call by a Famous-Barr employee located Mrs. McMahon at the Frost address. This information was conveyed to Frank and, on March 10, an alias special summons, returnable April 7, 1961, was issued by the clerk of the magistrate court. Summons was directed to "Special Process Server M. Rau", an employee of Famous-Barr, who was at that time an outside collection man. One of his duties was acting as special process server when called upon. During March, 1961, he served fifteen summonses in St. Louis and St. Louis County in actions by Famous-Barr.

Rau made some unavailing trips to the Frost Avenue address. He returned on Saturday, March 18, at a time which he placed at sometime in the afternoon, and knocked on the door at 8610-a Frost. According to him, a man came to the door and Rau said, "Tom W. McMahon, Jr?" and the man said, "Yes." Rau told him he had a summons for him and handed him two copies, one for himself and one for his wife. While he was doing so, Rau saw a woman in the apartment whom he identified as Mrs. McMahon. He noted that she was pregnant and he remarked about preparations apparently under way by the occupants to move. According to Rau, no other conversation passed and he returned to his automobile and made a note of the fact that service had been made. On April 4, 1961, he signed the return, showing service of the summons by delivery of a copy to appellant and leaving a copy for Mrs. McMahon with her husband at her husband's abode. The return was prepared by Frank and signed and sworn to by Rau before Woodrow Whitlow, a notary public and credit manager for Famous-Barr.

As will be more fully discussed below, appellant strenuously denies that he was the person served by Rau. On the basis of Rau's return and in the absence of any appearance by the McMahons, a default judgment was entered on behalf of respondent in the magistrate court on April 7, 1961, in the amount of $184.26 and costs.

Around the end of March, 1961, Mrs. McMahon, who had by then remarried to a man named Whitehurst, moved from the apartment at 8610-a Frost. After the judgment had been recovered, efforts were made by the Famous-Barr credit department to locate the McMahons. Apparently a letter of some sort was addressed to appellant, on April 14, 1961, at McDonnell Aircraft Corporation where he was then working. However, a notation in the records on April 21 states "not at McDonnell Aircraft." A telephone call to a former neighbor at the Frost Avenue address pro-

vided the information that Mrs. McMahon had moved to Florissant and might be located there under the name of Whitehurst.

In May, an employee of Famous-Barr called the appellant's mother, Mrs. Gladys McMahon, with whom appellant was living at the Stanford Avenue address. Mrs. McMahon's name had been given as that of appellant's nearest relative in the credit application made in 1956 and her address was the same as at that time. The caller told appellant's mother about the account. She informed the caller that appellant and his former wife were divorced. Word was left for appellant to call a Mrs. Ploesser at Famous-Barr. On May 15, 1961, appellant did so and told Mrs. Ploesser that he was divorced in 1960, that he paid the balance due on the bill at that time and was not thereafter responsible for the account. He also told her that a letter had been written asking that the account be closed. According to appellant, Mrs. Ploesser did not tell him that judgment had been taken on the account. Mrs. Ploesser stated that she did not know of the judgment at that time.

Subsequent calls located Marion. According to Famous-Barr records, they were informed that Marion had been married to Kenneth Whitehurst for several months and that she was just home from the hospital with a new baby. On May 29, a Famous-Barr employee talked to Marion, then living at 1705 Fenmore in Florissant. She told the person calling her that she had no intention of paying the bill and that she was just home from the hospital with a new baby.

The record is silent as to further activity until June 7 when Frank filed a memorandum in the magistrate court requesting the issuance of execution, with garnishment summons, directed to McDonnell Aircraft Corporation, garnishee of appellant. Execution and summons of garnishee were issued and summons served on McDonnell on June 16. After the summons had been served, appellant, who was employed as an engineer at McDonnell, was called to the personnel office by Mr. Ker. According to appellant, at that time he first learned of the suit and judgment. He explained to Mr. Ker that the indebtedness represented purchases by his former wife from whom he had been divorced and that he did not believe he was responsible for it. He told Ker he would have his attorney look into the matter. Appellant then got in touch with his attorney who in turn got in touch with Frank. Appellant's paycheck was held by McDonnell until June 21 when Frank called and said that the garnishment would be released. On June 23, 1961, Frank requested the magistrate to give "full release to the garnishee" and copy of the release was delivered to McDonnell and placed in appellant's personnel file along with the garnishee summons. This suit was filed August 4, 1961.

Respondent has moved to dismiss the appeal on the grounds that the points relied upon, as stated in appellant's brief, are insufficient under Civil Rule 83.05, V.A. M.R. Appellant's theory of the appeal is that the finding of the trial court is against the law and the evidence and that, under Section 510.310, RSMo 1959, V.A.M.S., the appellate court in a non-jury case was required to review the case upon both the law and the evidence. See Civil Rule 73.01, V.A.M.R. "On an appeal in an equity case, such as this, the appellate court reviews the whole record, determines the weight and value of the evidence, and reaches its own conclusions as to the facts, giving due deference to the findings of the chancellor who saw the witnesses and heard their testimony. Botto v. James, Mo.Sup., 209 S.W.2d 256; Mueller v. Mueller, Mo. Sup., 318 S.W.2d 365. But the appellate court performs the above functions only in respect to the specific matters urged by appellant as constituting error. It does not review the whole case on its own initiative to determine what result it would have reached if it were sitting as the trial judge." Schlanger v. Simon, Mo.Sup., 339 S.W.2d 825, 828. We, therefore, must examine appellant's assignments of error. In

his brief, appellant sets out his "POINTS RELIED ON" as follows (omitting citations):

"The Court erred in its finding that the judgment is valid and binding.

"1.	The final judgment was not conclusive proof of probable cause.

"2.	The evidence showed that the account was not chargeable to plaintiff.

"3.	The evidence was sufficient to rebut and overcome the presumption of probable cause resulting from the final judgment.

"4.	The evidence was sufficient to rebut and overcome the presumption that plaintiff was served with summons."

Although these points might have been more definitely related to alleged error on the part of the trial court, they are not mere abstract statements. They are related to the action of the trial court which the appellant questions and the gist of the appellant's contentions may be derived therefrom. Therefore, the motion to dismiss on such grounds is overruled.

Respondent also moves to dismiss the appeal on the grounds that the points relied on do not, in any event, state grounds for reversal of the trial court's judgment. As hereafter appears, we agree with this contention as to some of the points. However, others do present sufficient grounds and the motion to dismiss is overruled.

In our review, we will look first at appellant's point 4, "The evidence was sufficient to rebut and overcome the presumption that plaintiff was served with summons." Insofar as we can find, the trial court, in reaching its conclusion that the appellant had failed to sustain his burden of proof on the issue of fraudulent service, relied upon no presumptions. The court decided the issue on the basis of the conflicting oral testimony which it heard. We will, therefore, consider this assignment as presenting the question of whether or not the evidence warrants a judgment favorable to the appellant on the issue of fraud.

The burden was upon appellant to prove by convincing evidence that the judgment was based upon fraudulent return of service. Picadura v. Humphrey, Mo.Sup., 335 S.W.2d 6, 12. In our review of this aspect of the case, we make our own determination of the facts. However, where the factual issue is one to be determined from directly conflicting oral testimony, as is the case here, we defer strongly to the findings of the chancellor on the matter of credibility. Picadura v. Humphrey, supra. His opportunity to hear the testimony directly from the witnesses and to observe their demeanor while testifying places him in a better position to weigh and assess the value of the testimony offered and to resolve the conflicting versions. Mueller v. Mueller, Mo.Sup., 318 S.W.2d 365, 369; Vest v. Bialson, 365 Mo. 1103, 293 S.W.2d 369, 379, 63 A.L.R.2d 504.

Appellant stated unequivocally that he was not served with summons. Rau, on the other hand, stated that he received an affirmative answer when he stated to the person who answered the door at 8610-a Frost Avenue, "Thomas W. McMahon, Jr.?" He stated that the man he served was similar in appearance to the appellant although he admitted he could not positively identify him. On seeing the former Mrs. McMahon subsequently, he identified her as similar to the woman he saw in the apartment at the time of the service. He stated that the woman whom he saw at that time was pregnant and Mrs. McMahon (Whitehurst) did have a baby in May, two months later. He recalled that the occupants of the apartment appeared to be moving and apparently Mrs. McMahon did move from the apartment some time during the month of March. Rau saw Mr. Whitehurst later and stated that he was reasonably certain Whitehurst was not the man whom he served, although, again, he did not say positively that he was not.

The conflict in the testimony is clear and irreconcilable. There is little by way of

circumstances which tends to lend greater weight to the testimony of one than the other. Neither was a wholly disinterested witness. No other witness testified directly on the issue.

Appellant maintains that he was never at the Frost Avenue apartment on Saturday after the divorce. He stated that he went there only to get the children and that he got them on Saturday only if it was Christmas Day. His father substantiated this by stating that appellant brought the children to his home and that he "can't say that he had seen them on Saturday unless it was Christmas or a birthday. Uusally it was on Sunday." Appellant also testified that he did not, when he did obtain the children, enter the apartment. Rau testified that the person whom he served was inside the apartment and came to the door in answer to his knock. Appellant insisted that he always called his former wife in advance and told her when he would get the children so that they would be ready and he would not have to wait for them.

Appellant did have the right to obtain custody of the children on either Saturday or Sunday. He testified that he got them at the Frost Avenue address for the last time about two weeks before Easter. Saturday, March 18, the date on which Rau claimed to have made the service, was in the weekend two weeks prior to Easter in 1960.

Although Rau was not positive, he placed the time of service at sometime after noon. Appellant's right to custody of the children was from 1:00 P.M. to 7:00 P.M. on either Saturday or Sunday. The employment records of McDonnell Aircraft showed that appellant did not work there on the Saturday in question. Appellant said that, even though he did not work on Saturdays, he did not get the children on that day, but usually set it aside for "getting done the things I have to do around the house."

Appellant also points to his failure to take any action regarding the suit. He contracts this with his promptly consulting his attorney when he learned that his former wife had remarried, thereby affecting his alimony liability. He also points to his prompt action in getting in touch with his attorney when he learned from his employer of the garnishment.

Appellant argues that Rau refused to testify positively that appellant was the man whom he served, stating that the man was "similar" to the appellant and "about his build." Rau also did not positively identify the woman in the apartment as Marion, nor did he positively state that Whitehurst was not the man whom he served. Of course, it was not necessary for Rau to testify positively on the matter of identification in order to give probative value to his testimony. State v. Blackmore and Godsey, 327 Mo. 708, 38 S.W.2d 32; State v. Franke, 159 Mo. 535, 60 S.W. 1053, 1054. In the latter case, the court stated: "It was by no means necessary that any of the witnesses should positively identify defendant as the one they saw passing by in the road wagon. It sufficed that the witnesses believed that the person they saw was defendant."

Upon our review of the evidence, we find nothing which enables us to resolve the conflict in the testimony. In such circumstances, we will defer to the trial court's detemination of which oral evidence should be accepted and which should be rejected. Leimkuehler v. Shoemaker, Mo.Sup., 329 S.W.2d 726. Therefore, we would affirm the judgment of the trial court as to Count I.

In reaching this conclusion, we do not consider the evidence urged upon us by the appellant, relating to the failure of respondent's employees to investigate more fully the information which they received concerning appellant's divorce and his obligation to pay the account. These matters might have had bearing on the issue, in an action for malicious prosecution, of probable cause for institution of the suit on the account. As appellant points out, in a malicious prosecution action, the defendant may be chargeable with knowledge of matters which he might have ascertained by due diligence prior to bringing his action.

La Chance v. National Pigments & Chemical Co., Mo.App., 104 S.W.2d 693; McAnarney v. Commonwealth Loan Co., Mo. App., 208 S.W.2d 480; Jones v. Phillips Petroleum Co., Mo.App., 186 S.W.2d 868. However, the court in its judgment on the factual issue was concerned with the existence of fraud in connection with the return of service, not with the issue of probable cause in an action for malicious prosecution. In an action to set aside a judgment for fraud, proof of lack of diligence is not evidence of fraud. Irvine v. Leyh, 102 Mo. 200, 14 S.W. 715.

As for the appellant's point that the evidence showed that the account was not chargeable to him, we agree with respondent that a determination of this point alone in favor of appellant would not affect the judgment of the trial court. This point might have had significance had we concluded that the evidence of fraud warranted the reversal of the judgment. In that event, a meritorious defense to the original action would also have to have been shown in order to justify relief. Hockenberry v. Cooper County State Bank, 338 Mo. 31, 88 S.W.2d 1031, 1037; Patterson v. Fitzgibbon Discount Corporation, Mo.App., 339 S.W.2d 301, 306. The issue of fraud having been resolved against appellant, his point 2 can avail him nothing on this appeal.

We now turn to points 1 and 4, that the judgment sought to be set aside is not conclusive proof of probable cause, and that the evidence was sufficient to overcome the presumption of probable cause resulting from such judgment. We need not consider the latter proposition. Had the matter which was heard been an action for malicious prosecution, this proposition could have been relevant. Lack of probable cause is an element of an action for malicious prosecution. Whenever the defendant in malicious prosecution has had a favorable judgment at one stage of the original proceedings, the plaintiff in malicious prosecution must generally overcome the presumption that such judgment shows probable cause for the original action. This he may do, as appellant here states, by showing that the judgment in the original action was obtained by false or fraudulent testimony, or other improper means, or that the defendant, as plaintiff in the original action, did not himself believe the facts alleged in support of his cause of action. Wilcox v. Gilmore, 320 Mo. 980, 8 S.W.2d 961, 963; Dawes v. Starrett, 336 Mo. 897, 82 S.W.2d 43; Hughes v. Aetna Insurance Company, Mo.Sup., 261 S.W.2d 942, 950. We are not here concerned with a trial, on the merits, of an action for malicious prosecution. Therefore, appellant's evidence on this issue is not here significant.

As for the proposition that the judgment was not conclusive proof of probable cause, we have heretofore alluded to the rule which appellant would have us apply, in passing upon the action of the trial court in dismissing Counts II and III of his petition. We find difficulty in the application of this proposition to Count II of the petition. In his brief, appellant describes his cause of action as one for malicious prosecution in three counts. Our consideration of Count I has shown that it stated an action to set aside a judgment for fraud in the service of process. The language of the petition does not support the appellant's position that Count II is an action for malicious prosecution. By its language, Count II is an action for damages for the fraudulent service of process, charged in Count I. As such, upon failure of his proof as to Count I, Count II of the appellant's petition also failed. The issue of probable cause would not be involved and the judgment in the suit to set aside the original judgment for fraud would be res judicata of the claim of fraud under Count II. Davis v. Southwestern Bell Telephone Co., Mo.Sup., 333 S.W.2d 31, 35.

The difficulty with respect to Count II as stating an action for malicious prosecution arises from the fact that there had been, at the time of filing the action, no termination favorable to the appellant of

the original action and there is not one now. That the action upon which the claim of malicious prosecution is based must have terminated favorably to plaintiff in the malicious prosecution action is well established. This is an element of the cause of action, along with the initiation of the proceedings by or at the instance of the defendant in the malicious prosecution, want of probable cause for the proceedings, malice and damage. Ripley v. Bank of Skidmore, 355 Mo. 897, 198 S.W.2d 861, 866; Mooney v. Kennett, 19 Mo. 551; Sharpe v. Johnston, 76 Mo. 660; Higgins v. Knickmeyer-Fleer R. & I. Co., 335 Mo. 1010, 74 S.W.2d 805. Any effort by appellant to state a cause of action for malicious prosecution based on the judgment in the magistrate court may well have been premature prior to his succeeding in having that judgment set aside. Zickel v. Knell, 357 Mo. 678, 210 S.W.2d 59, 3 A.L.R.2d 1304; Moffett v. Commerce Trust Co., Mo.Sup., 283 S.W.2d 591; Collar v. Peninsular Gas Co., Mo.Sup., 295 S.W.2d 88. In any event, as long as that judgment stands, it is an effective bar to an action by appellant for malicious prosecution based upon it. Mooney v. Kennett, supra; Zickel v. Knell, supra.

Since this essential element of a cause of action for malicious prosecution under Count II is lacking, the issue of probable cause would not arise and the trial court's dismissal of that count, however considered, was clearly in order.

As for Count III, based on the alleged wrongful garnishment, the appellant has attempted to state his cause of action as one for malicious prosecution. He alleges that respondent made a full and unconditional release of the garnishment and that appellant paid no money or made no promise to do so in order to secure the release of the garnishment, and that the garnishment proceeding terminated in favor of the appellant.

■■■■■ Having failed in his attempt to set aside the judgment for fraud, may the appellant still attack it under Count III of

his petition in an effort to recover damages for the garnishment proceedings? We conclude that he cannot. The rule which appellant endeavors to apply, found in Wilcox v. Gilmore, and Dawes v. Starrett, supra, does not apply in this situation. In those cases, the judgment which the court permitted to be attacked on the issue of probable cause was not the final judgment in the case. In the Wilcox case, it was the judgment of the trial court which had been reversed on appeal. In the Dawes case, the action relied upon as evidence of probable cause and permitted to be attacked (unsuccessfully) was the return of an indictment for an offense of which the plaintiff in malicious prosecution was subsequently acquitted. Wilkerson v. McGee, 265 Mo. 574, 178 S.W. 471; Higgins v. Knickmeyer-Fleer R. & I. Co., supra; Laughlin v. St. Louis Union Trust Co., 330 Mo. 523, 50 S.W.2d 92, all involved an attack on a judgment which was not the final, decisive judgment in the original proceedings.

To permit appellant here to attack the judgment would be to allow a collateral attack on the final judgment in the original cause. Having failed in his direct attack, he should not now be permitted a collateral one. La Presto v. La Presto, Mo.Sup., 285 S.W.2d 568, 570; 49 C.J.S. Judgments § 401, page 792; 30-A Am.Jur., Judgments, Section 844, page 762.

Appellant has cited one Missouri case in which the plaintiff in a malicious prosecution action was permitted, in order to show lack of probable cause for the original proceeding, to attack, in effect collaterally, the judgment in such cause. Beatty v. Puritan Cosmetic Company, 236 Mo.App. 807, 158 S.W.2d 191, involved facts in some respects similar to those here. Mrs. Beatty and her husband were sued on an account owed solely by the husband. Mrs. Beatty claimed not to have been served with summons. A default judgment was taken. Thereafter, garnishment issued on execution. Mrs. Beatty filed a motion in the justice court to quash the execution on the grounds that she had not been served. The

motion was overruled and the garnishee paid into court money which he held for the account of Mrs. Beatty and the judgment was satisfied. Mrs. Beatty did not appeal from the overruling of her motion to quash the execution. Instead, three days after the judgment had been satisfied, she brought suit for malicious prosecution of the original action and garnishment. The court of appeals reversed a judgment of the trial court in favor of the defendant on a demurrer to the plaintiff's evidence. The court held that plaintiff's evidence, under Wilcox v. Gilmore and Dawes v. Starrett, supra, was sufficient to overcome the presumption of probable cause, arising from the justice court judgment. The evidence so considered related to Mrs. Beatty's nonliability for the account and the fact that she had so advised the defendant. The evidence was not related to jurisdictional defects which would have rendered the judgment void and thereby subject to collateral attack.

The Beatty case was followed by the Kansas City Court of Appeals in the case of Mannisto v. Rainen Furniture Co., Mo.App., 295 S.W.2d 841. In that case, both husband and wife were sued on a note given by the wife for a purchase for which she alone was liable. There was valid service on both, but the wife did not inform her husband about the suit. Instead, she attempted to pay the account. Relying on the assurances of defendant's officers that she need not appear in the suit, she did not do so and a default judgment was taken against the husband and wife. Subsequently a garnishment issued to a bank in which they had a joint account. The husband, claiming ignorance of the matter until the garnishment, paid the judgment and the garnishment was released. He then brought an action for malicious prosecution and obtained a judgment for damages which was affirmed on appeal. In its opinion, the court stated (295 S.W.2d 845):

"In the instant case plaintiff alleged in his amended petition, and his evidence showed, that the defendant herein obtained a default judgment against him and his wife in the prior action before a magistrate. No appeal was taken from that judgment. Plaintiff recognized that he had the burden of overcoming the effect of the judgment against him on the issue of probable cause. He alleged, and undertook to prove, that the judgment was procured by fraud."

The court of appeals concluded that the evidence was sufficient to establish fraud in the procurement of the judgment.

Aside from the fact that in neither of these cases was the element of favorable termination of the original action present, we find no other cases in this state in which the final, outstanding judgment in the original proceeding has been permitted to be attacked in a malicious prosecution proceeding in order to overcome its effect on the issue of probable cause.

We are of the opinion that the rule which appellant would apply here properly may be applied only as to a judgment which is not the final judgment in the original proceedings and has no application when the judgment attempted to be attacked is a standing, final judgment. To uphold appellant's contention would permit contradictory judgments on the same issue to stand, the result sought to be avoided by the requirement of favorable termination of the original proceeding as a condition for the bringing of an action for malicious prosecution. That rule "rests on the ground that the court will not tolerate inconsistent judgments upon the same question between substantially the same parties." 34 Am.Jur., Malicious Prosecution, Section 27, page 719. Such a situation should not be permitted under the guise of showing want of probable cause. Insofar as the Beatty and Mannisto cases are contrary to this conclusion, they should not be followed and are hereby overruled.

The fact that the judgment in this case was by default would not permit the appellant to take advantage of the right which has been granted to attack the original judg-

ment if it has been entered in ex parte proceedings. See Ripley v. Bank of Skidmore, supra. By refusing to set aside the judgment for fraud in the service of process, the judgment stands as one entered on valid service of process, and not ex parte. State ex rel. Gardiner v. Dickmann, 175 Mo.App. 543, 157 S.W. 1012, 1015.

We are of the opinion that the trial court, in view of its finding on Count I of appellant's petition, with which we concur, properly dismissed Counts II and III of the petition.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.