Reino MANNISTO, Respondent,

v.

RAINEN FURNITURE COMPANY, a corporation, Appellant.

No. 22377.

Kansas City Court of Appeals.

Missouri.

Oct. 1, 1956.

Frank P. Sebree, Harry A. Morris, Sebree, Shook, Hardy & Ottman, Kansas City, for appellant.

Lillie Knight, Kansas City, for respondent.

BOUR, Commissioner.

Reino Mannisto instituted this action to recover damages for the alleged malicious prosecution of a civil suit against him by defendant, Rainen Furniture Company, a corporation engaged in the retail furniture business in Kansas City, Missouri. Verdict and judgment were in favor of plaintiff for $250 actual damages and $500 punitive damages. Defendant has appealed.

The evidence shows that at all times mentioned herein plaintiff and his wife, Mildred Mannisto, were living together at 5317 Willow Street, Kansas City, Missouri. In December, 1951, defendant advertised a telelounge which it offered to sell on terms for $22.35, the sum of $1.25 to be paid on delivery and the balance in weekly installments. A telelounge is a combination chair and table with a lamp attached. Mrs. Mannisto read the advertisement and on December 6, 1951, she called defendant's store by telephone and ordered a black and red telelounge. When the telelounge was delivered on December 11, 1951, she paid the deliveryman $1.25 and signed a note for $21.10, the balance of the purchase price. She also signed a chattel mortgage on the telelounge, securing the payment of the note for $21.-10. The note and chattel mortgage were prepared by the defendant. The note reads in part as follows: "For value received, on or before December 6, 1951, the undersigned jointly and severally promise to pay to the order of Rainen Furniture Company * * * the sum of Twenty-one and 10/100 Dollars, in 17 consecutive weekly installments of $1.25 each," beginning "January 11, 1952". Plaintiff and his wife were named as mortgagors in the chattel mortgage. The evidence shows, however, that plaintiff was not at home when the telelounge was delivered, and that he did not sign the note or the chattel mortgage.

Mrs. Mannisto testified that after paying the deliveryman $1.25 and executing the note and chattel mortgage, she examined the telelounge and found that it was broken; that she requested the deliveryman to take it back to defendant's store, but he said he could not do that; that she then called defendant's store and explained that "the telelounge was broken and nobody would be able to sit in it"; that she was informed that defendant did not have a telelounge in stock but that a new one would be delivered to her as soon as defendant "got some more in stock"; that she was told to keep the broken telelounge until defendant sent her a new one; that thereafter she had several telephone conversations with defendant's agents regard-

ing the broken telelounge and made inquiry about its replacement when she was in defendant's store on different occasions; and that on each occasion she was told that defendant did not have a new telelounge in stock; and that she kept the broken telelounge in the corner of the front room because it could not be used.

The evidence shows that on February 6, 1953, and fourteen months after the delivery of the broken telelounge, defendant delivered another telelounge to the Mannisto home and picked up the broken one. Mrs. Mannisto testified that when the new telelounge was delivered she offered to pay the deliveryman $10, but that he said he could not accept the money. Thereafter, on March 14, 1953, she obtained a postal money order for $10 and sent it to the defendant by mail.

On March 17, 1953, the Rainen Furniture Company instituted an action before Charles B. Cash, magistrate of the fifth district, Jackson county, Missouri, wherein Reino Mannisto, plaintiff in the instant case, and his wife, Mildred Mannisto, were joined as defendants. The petition in that action alleged that on December 6, 1951, Reino Mannisto and Mildred Mannisto became indebted to the Rainen Furniture Company in the sum of $22.35; that no payment had been made "on said account since December 11, 1951, the remaining balance being $21.10"; that although the furniture company had demanded payment the defendants had "failed and refused to complete said payments" and had "at no time lived up to their original agreement"; and prayed "for judgment in the amount of $21.10, plus interest at the rate of six per cent, along with reasonable attorney fees and court costs". Summonses were issued and served on Reino Mannisto and Mildred Mannisto, on March 23, 1953. The return date was April 8, 1953. On April 7, 1953, Mrs. Mannisto bought a money order for $5 and sent it through the mail to defendant.

On April 8, 1953, a default judgment for $31.52 and costs was entered by the magistrate against Reino Mannisto and his wife. The judgment recites that the magistrate heard evidence on behalf of the Rainen Furniture Company; and that he found that the company was entitled to recover "$21.10 principal, 42 cents interest, $10 attorney fees, total $31.52". The records of the company showed that it received the money order for $10 on March 16, 1953,. and that when the judgment for $31.52' was rendered, the balance due on the purchase price of the telelounge was $11.10. As we understand the evidence, the money order for $5 reached the company on April 8, 1953, but after the company had obtained the default judgment. An execution was issued on the judgment, and at 10:50 a. m., on August 12, 1953, a summons of garnishment in aid of execution was served on the Raytown Bank of Raytown, Missouri. The return date of the summons was September 1, 1953. When the summons was served the bank had an account which it carried in the names of the plaintiff herein and his wife. This account was opened in May, 1953, and both the plaintiff and his wife had the right to draw checks against it. According to plaintiff's testimony, he furnished all of the money that was deposited in the account.

Mrs. Mannisto testified that when she and her husband were served with summonses on March 23, 1953, she called defendant's store on the telephone; that the man who answered her call said his name was Jack Rainen; that she told him that she paid $10 on the account a short time before she was served with summons; that he asked her to hold the line a minute; that when he returned to the telephone he told her that he had found her "payment", that it had been overlooked; that she then asked him whether she would have to appear in court, and he said she would not, but that she would have to pay the filing fee of $5; that she told him she would not pay the filing fee because defendant had overlooked.

her ten-dollar payment; that he then told her that she would not have to appear in court, that "they would take care of it", and that she did not appear in the magistrate court or employ counsel to represent her, because she had been told by the man who answered the telephone that she "would not have to go to court", that "they would not have the case". Jack Rainen was the president of the defendant company. He did not testify at the trial of the instant case. The testimony of Dale Beal, a witness for defendant, tended to show that Jack Rainen was not in the store on March 23, 1953.

Mrs. Mannisto further testified that she did not know that the defendant herein had taken a default judgment against her and her husband until August 12, 1953, when the bank notified her by telephone that the checking account had been garnisheed; that before she had notice of the garnishment she drew a check for $6.10 on the Raytown Bank, payable to the defendant and dated August 12, 1953, to cover the balance due on the purchase price of the telelounge, and that she gave the check to plaintiff to be mailed to defendant. Plaintiff testified that he mailed the check on the morning of August 12th. After receiving notice of the garnishment, Mrs. Mannisto called defendant's store and told the person who answered the telephone that she had sent to defendant a check for $6.10 in payment of the balance due on her account, and that she could not understand why the bank account had been garnisheed; that she was informed that the defendant company would not have the bank account released until she paid the court costs, which amounted to $23.35; that when the plaintiff received his pay check on August 14th, he gave her $23.35 out of his earnings to pay the defendant as court costs; that on the same day she went to the furniture store and paid defendant $23.35; that defendant's cashier gave her a receipt (Exhibit 6) marked "Court Costs—Paid in Full"; and that when she asked "for a release of the bank account", she was told that defendant's attorney was handling the case. On the following Monday, August 17th, she called defendant's attorney and asked him to release the bank account. On August 22, 1953, the garnishment proceeding was dismissed and the Raytown Bank released from liability as garnishee. When the defendant collected $23.35 as court costs, it retained $21.52 of that amount and sent the remainder ($1.83) to the magistrate court to be applied on the costs. The check for $6.10 was not cashed by defendant; it was returned to Mrs. Mannisto after the garnishment proceeding was dismissed.

Mrs. Mannisto testified that plaintiff was not present on December 6, 1951, when she called the defendant on the telephone and ordered a telelounge; that she bought the telelounge for her own use and without plaintiff's knowledge or consent; that she was regularly employed at the time; that she did not tell plaintiff that she had purchased a telelounge until he came home from work on the day the broken telelounge was delivered; that she did not ask his permission to make the purchase because she intended to pay for the telelounge out of her salary; and that she had used her own money to buy other articles for the home, such as "curtains, bedspreads, drapes, and things like that."

Plaintiff testified that he did not learn that his wife had purchased a telelounge until he came home from work on December 11, 1951, the day the broken telelounge was delivered; that he did not know that there was a balance due on the purchase price of the telelounge until he was served with summons in the action instituted by defendant before the magistrate; that he did not authorize his wife to buy such an article; that he had never purchased any merchandise from defendant; that he had never talked to any representative of defendant; that he had never received any letters from defendant; that he did not know that defendant had obtained a judgment against him and his wife until he

learned that the bank account had been garnisheed; that the telelounge (the replacement) was still in his home; and that this piece of furniture belonged to his wife. Other evidence will be referred to in the course of the opinion.

Defendant's first contention is that the court erred in overruling its motion for a directed verdict at the close of all the evidence, and in overruling its after-trial motion for judgment in accordance with the motion for a directed verdict.

It is elementary that the plaintiff in an action for malicious prosecution has the burden of proving, as an essential element of his case, that the proceeding complained of was instituted or continued against him without probable cause, whether such proceeding was a civil action or a criminal prosecution. Kvasnicka v. Montgomery Ward & Co., 350 Mo. 360, 166 S.W. 2d 503, 505; Wilcox v. Gilmore, 320 Mo. 980, 8 S.W.2d 961, 962. According to the Missouri decisions, a judgment in favor of the plaintiff in the original action constitutes "prima facie evidence" of probable cause, and becomes "conclusive" thereof unless the plaintiff in the action for malicious prosecution rebuts such "prima facie evidence" by evidence that the judgment was obtained by fraud or other unfair means. Hughes v. Aetna Ins. Co., Mo. Sup., 261 S.W.2d 942, 950; Ripley v. Bank of Skidmore, 355 Mo. 897, 198 S.W.2d 861, 864; Laughlin v. St. Louis Union Trust Co., 330 Mo. 523, 526, 50 S.W.2d 92, 93; Wilcox v. Gilmore, supra, 8 S.W.2d loc. cit. 962; Beatty v. Puritan Cosmetic Co., 236 Mo.App. 807, 158 S.W.2d 191, 194. See also Kvasnicka v. Montgomery Ward & Co., supra, 166 S.W.2d loc. cit. 505; Davidson v. Montgomery, Mo.App., 232 S.W.2d 816, 819; and La Chance v. National Pigments & Chemical Co., Mo.App., 104 S.W. 2d 693, 699, where the actions for malicious prosecution were based on criminal proceedings. In most of the Missouri cases involving the point under discussion, the term "prima facie evidence" has been used

to signify the equivalent of a presumption. See 9 Wigmore, Evidence, sec. 2494 (3d ed.)

In Ripley v. Bank of Skidmore, supra, 198 S.W.2d loc. cit. 864, an action for malicious prosecution of several civil proceedings, the court said: "The rule is that a judgment or finding in favor of the plaintiff in the original action is conclusive evidence of probable cause, or estops defendant therein from denying the existence of probable cause, in the absence of fraud or other improper means used in obtaining the judgment or of evidence that the parties responsible for the prosecution of the action did not believe the testimony which induced the judgment. Moreover, the conclusiveness of a judgment on the question of probable cause is not ordinarily affected by the fact it is found to be erroneous, or is reversed, or is set aside for irregularity, on appeal to a higher court", citing Laughlin v. St. Louis Union Trust Co., supra. In Wilcox v. Gilmore, supra, 8 S.W.2d loc. cit. 963, the court said: "In the Missouri decisions, such prior judgment is generally spoken of as prima facie evidence of probable cause, which may be rebutted or overthrown by evidence that such judgment or commitment was obtained by false or fraudulent testimony, or other improper means, or that the prosecutor himself did not believe the facts alleged in support of the prosecution." (Citing cases.)

In the instant case plaintiff alleged in his amended petition, and his evidence showed, that the defendant herein obtained a default judgment against him and his wife in the prior action before a magistrate. No appeal was taken from that judgment. Plaintiff recognized that he had the burden of overcoming the effect of the judgment against him on the issue of probable cause. He alleged, and undertook to prove, that the judgment was procured by fraud.

Mrs. Mannisto testified that when she and her husband were served with summonses on March 23, 1953, she called de-

fendant's store on the telephone and talked to a man who identified himself as Jack Rainen; and that after some discussion this man told her that she would not have to appear in court, that the case would be dismissed. She testified that she did not appear in the magistrate court or employ counsel to represent her, because she had been told by the man who answered the telephone that the case would be dismissed and that she "would not have to go to court". As stated, Jack Rainen was president of the defendant company. Plaintiff testified that immediately after he and his wife "received" the summonses at their home, he heard his wife call "Rainen's" on the telephone and "ask what the summons was all about"; and that he did not appear in the magistrate court or retain counsel to represent him, because his "wife had taken care of the matter". He further testified that he had never talked to "anyone representing the Rainen Furniture Company", and that he had never received "any telephone calls or letters" from defendant.

The facts hypothesized, in plaintiff's main instruction, included the following: that after the suit in the magistrate court "had been filed the defendant company represented to Mildred Mannisto that said suit had been filed by mistake and promised that it would be dismissed by the defendant company before trial, * * * and * * * that plaintiff relied upon defendant company's promise to dismiss said suit, and was thereby induced not to appear in court on April 8, 1953, the date set for the trial of said action, or to employ counsel to defend him, and * * * that the defendant, knowing that plaintiff and Mildred Mannisto had relied upon said promise and that by reason thereof neither plaintiff nor Mildred Mannisto would appear at said trial, falsely and knowingly concealed from said magistrate its promise to dismiss said action, and * * * that defendant company obtained a default judgment against the plaintiff by false testimony, known to the defendant, its agents and employees to be false, * * *." It will be noticed that this instruction was drawn in the conjunctive.

■ The question presented for determination by defendant's first contention is whether the plaintiff made a case for the jury on the issues submitted. Fowler v. Gulf, Mobile & Ohio R. Co., Mo.App., 286 S.W.2d 404, 408, and cases cited. In deciding this question we must, of course, view the evidence in the light most favorable to plaintiff.

■ Defendant seems to concede that there was evidence from which a jury could find that defendant, acting through an agent, represented to Mrs. Mannisto that the case in question "would be dismissed by the defendant company before trial". There was no evidence, however, to support a finding "that plaintiff relied upon defendant company's promise to dismiss said suit, and was thereby induced not to appear in court on April 8, 1953, * * * or to employ counsel to defend him". In the first place, there is nothing in the record which would warrant a finding that the alleged promise or representation was ever communicated to plaintiff. In fact plaintiff's main instruction did not require the jury to make such a finding. "A representation, to be relied upon, must come to the knowledge of the complaining party, and it must appear that it was made directly or indirectly to him, since it cannot be supposed that he was influenced by a statement which was neither made nor communicated to him." 23 Am.Jur., Fraud and Deceit, sec. 142, p. 942. See also, Id., sec. 150, p. 954; Annotation 91 A.L.R. 1363. In the second place, plaintiff did not testify that he relied upon any such promise or representation of defendant. As stated, he testified that he did not appear in the magistrate court or employ counsel to represent him, because his "wife had taken care of the matter". It follows that the evidence was not sufficient to sustain a finding that defendant knew that plaintiff "had relied upon said promise and that by reason thereof" would not "appear at said trial".

The question remains, however, whether the evidence was sufficient to support the charge "that defendant company obtained a default judgment against plaintiff by false testimony, known to defendant, its agents and employees to be false". Plaintiff asserts that "no person can be held liable on a note which he did not sign"; that "the defendant in its answer to plaintiff's third amended petition upon which the case was tried, admitted that the note and chattel mortgage executed by Mildred Mannisto for the telelounge ordered· on December 6, 1951, did not bind this plaintiff"; that the judgment of the magistrate recites that he heard evidence on behalf of the present defendant, Rainen Furniture Company; that this recital "is sufficient to raise the inference" that evidence as to the liability of the present plaintiff was introduced on behalf of the furniture company at the trial before the magistrate, citing Beatty v. Puritan Cosmetic Co., supra; that "since plaintiff was not liable to the defendant on the note * * * (a fact which the defendant admitted in its answer), and since the undisputed evidence shows that defendant obtained a judgment against the plaintiff on the note", the defendant must have introduced false testimony in order to obtain the judgment against plaintiff. In the Beatty case, supra, an action to recover damages for alleged malicious prosecution of a civil suit before a justice of the peace, this court said: "The judgment of the Justice of the Peace recites that he heard evidence on behalf of the plaintiff, and we think that recital is sufficient to raise the inference that evidence as to the correctness of the account and the liability of Mr. and Mrs. Beatty was introduced on behalf of the Cosmetic Company". 158 S.W.2d loc. cit. 195.

Plaintiff introduced in evidence the petition and judgment in the action before the magistrate. The petition was denominated a ·"Petition on Account". As stated, it alleged that on December 6, 1951, Reino Mannisto and Mildred Mannisto became in-debted to the Rainen Furniture Company in the sum of $22.35; that no payment had been made "on said account since December 11, 1951, the remaining balance being $21.10"; that although the furniture company had demanded payment, the defendants had "failed and refused to complete said payments" and had "at no time lived up to their original agreement"; and prayed "for judgment in the amount of $21.10, plus interest at the rate of six per cent, along with reasonable attorney fees and court costs". (The principal amount of the note was $21.10. The note was dated December 6, 1951, and it contained a stipulation for the payment of "reasonable costs and expenses of collection and reasonable attorney's fees.") A default judgment for $31.-52 was rendered by the magistrate against Reino Mannisto and his wife. As we have said, that judgment recites that the magistrate heard evidence on behalf of the furniture company, and that he found that the company was entitled to recover "$21.10 principal, 42 cents interest, $10 attorney's fees, total $31.52". At the trial of the instant case, Lorraine McClaid, a witness for defendant furniture company, testified that during the year 1953 she was in charge of the company's records; and that the "Reino Mannisto account" (Exhibit 35) showed that when the company obtained the judgment for $31.52 in the magistrate court, the balance due on the purchase price of the telelounge was $11.10.

■ It must be conceded, of course, that plaintiff was not liable on the note, for his name did not appear thereon. Section 401.-018 RSMo 1949, V.A.M.S.; Mineral Belt Bank v. Elking Lead & Zinc Co., 173 Mo. App. 634, 158 S.W. 1066. While the petition in the action before the magistrate made no reference to the note, the furniture company recovered a judgment against the plaintiff for $21.10 plus interest and attorney's fees. Defendant's attorney testified that he introduced the note in evidence at the trial in the magistrate court, and continued:

"Q. Well, * * * as a lawyer, while you were in that courtroom, upon what theory did you tell the Magistrate Cash that Mr. Mannisto had agreed to pay for (the telelounge)? A. Well, I relied upon the evidence in the file.

"Q. What evidence in the file? A. The communications and notations and letters that Mr. Mannisto and Mrs. Mannisto agreed to accept this new telelounge. * * Well, * * * I don't believe it was in the letters but the investigation in the file that was sent to me that showed that.

"Q. Showed what, that Mr. Mannisto agreed to pay for that (sic)? A. That is correct.

"Q. Is there an agreement to that effect? A. Well, I presented it to Judge Cash just like there was."

As stated, plaintiff testified that he did not authorize his wife to buy a telelounge; that he had never purchased any merchandise from defendant; that he never talked to any representative of defendant; and that he had never received any letters or telephone calls from defendant. He further testified: "Q. Did you ever sign any paper whether it was a receipt or contract or anything of the sort between you and the Rainen Furniture Company? A. No." Viewing the evidence in the light most favorable to plaintiff, we conclude that it was sufficient to support a finding "that defendant company obtained a default judgment against plaintiff by false testimony known to defendant, its agents and employees to be false".

Defendant's second contention is that "plaintiff failed to prove that defendant lacked probable cause for instituting the magistrate proceeding". If the defendant company obtained the judgment against the plaintiff by false testimony, then the inference or presumption of probable cause arising from the judgment is rebutted and overcome and an inference of want of probable cause arises and supplies that in-dispensable element of the action. We have held that there was substantial evidence to make a case for the jury on that theory.

Defendant's last contention is that the court erred in refusing to give defendant's instruction numbered I, which reads as follows: "The court instructs the jury that a husband is bound to supply his wife with necessaries suitable to her situation and his own circumstances and condition in life, and upon failure so to do, she has the right to supply herself at his expense. If therefore, the jury finds that the article of furniture known as a telelounge was a necessity suitable to the situation of plaintiff's wife and plaintiff's circumstances and condition of life and were sold and delivered by defendant to plaintiff's wife upon the plaintiff's credit and the plaintiff had failed to supply her with such necessity, then the plaintiff is estopped to deny liability for such necessity and the defendant had the legal right to collect from plaintiff."

There was no evidence to support a finding that the telelounge was "sold and delivered by defendant to plaintiff's wife upon plaintiff's credit". Defendant's action in the magistrate court was not based on any such theory. Reino Mannisto and his wife were joined as defendants in that action, and the magistrate rendered a judgment against both defendants. This instruction was properly refused for other reasons, but we need not lengthen this opinion by discussing them.

The judgment should be affirmed, and the commissioner so recommends.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.