[Civ. No. 11502. Fourth Dist. Div. Two. Dec. 31, 1971.]

WILLIAM M. KACHIG et al., Plaintiffs and Appellants, v. LAURENCE BOOTHE et al., Defendants and Respondents.

## COUNSEL

Hurwitz & Hurwitz and Daniel L. Stack for Plaintiffs and Appellants.

Garrett & Dimino, Kenneth R. Garrett, R. Michael Hanley, and Robert H. Green for Defendants and Respondents.

## OPINION

**KAUFMAN, J.**—At the commencement of trial, defendants' motions for judgment on the pleadings were granted and judgment for defendants was entered. Plaintiffs (the Kachigs) appeal.

## FACTS

When a motion for judgment on the pleadings has the purpose and effect of a general demurrer, the facts alleged in the pleading attacked must be accepted as true, and the court may also consider matters subject to judicial notice. (*Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.,* 67 Cal.2d 408, 412 [62 Cal.Rptr. 401, 432 P.2d 3]; *MacIsaac* v. *Pozzo,* 26 Cal.2d 809, 813 [161 P.2d 449]; see 4 Witkin, Cal. Procedure (2d ed. 1971) pp. 2816-2818.) With the foregoing rules in mind, the essential facts may be stated as follows.

Franklin was a licensed real estate broker. In 1962 plaintiffs employed Franklin to effect the sale or exchange of their real property. Cisco was a real estate salesman employed by Franklin. As the result of an aborted real estate exchange transaction, Franklin sued the Kachigs for real estate brokerage commissions, and Boothe, the other principal to the exchange transaction, sued the Kachigs for damages for breach of contract. These actions were consolidated for trial. Jones was the attorney for Franklin and Boothe in the consolidated actions, and Cisco testified as a witness on behalf of Franklin and Boothe. Vital evidence in the trial of the consolidated cases consisted of a letter and the testimony of Franklin, Boothe and Cisco concerning this document. The text of the letter is set forth in full in *People* v. *Jones,* 254 Cal.App.2d 200, 208 [62 Cal.Rptr. 304]. The Kachigs were neither the sender nor the recipient of the letter. It purported to be from Boothe addressed to Franklin and purported to accept a counteroffer that had been made by Mr. Kachig. At trial of the consolidated cases, Mr. Kachig testified that he had never seen nor heard of this letter prior to trial. (See *People* v. *Jones, supra;* see also *In re Jones,* 5 Cal.3d 390, 395-397 [96 Cal.Rptr. 448, 487 P.2d 1016].)

Trial of the consolidated actions resulted in a judgment against the Kachigs in favor of Franklin in excess of $10,000 and in favor of Boothe for $100 plus costs. These judgments became final. The Kachigs paid the judgment in favor of Franklin in excess of $10,000, but Boothe never demanded payment of the judgment in his favor and it remains unsatisfied.

After a prolonged investigation, on or about November 1, 1965, the Kachigs ascertained that the letter purporting to constitute an acceptance of a counteroffer was a false document manufactured at the suggestion of Jones and that the testimony of Franklin, Boothe and Cisco concerning this document was perjured.

In a subsequent criminal proceeding the Orange County Grand Jury issued an indictment accusing Jones, Franklin and Cisco of conspiracy to

commit perjury and accusing Jones of subornation of perjury and offering false evidence. Boothe was granted immunity and testified on behalf of the prosecution. After jury trial, Franklin and Cisco were acquitted. Jones was convicted of subornation of perjury and offering false evidence but was found not guilty of conspiracy to commit perjury. (See *People* v. *Jones, supra,* 254 Cal.App.2d 200.)

On May 23, 1966, the Kachigs instituted the present action, naming as defendants Franklin, Boothe, Cisco and Jones. Combining allegations from several counts of the complaint for ease of presentation, they may be summarized as follows: that a fiduciary relationship existed between plaintiffs and Franklin and Cisco; that defendants knew Franklin and Boothe had no legitimate right of action against the Kachigs; that defendants nevertheless, with the substantial certainty of causing plaintiffs severe emotional distress, conspired to recover damages against the Kachigs through the malicious filing of false and fraudulent lawsuits; that pursuant to this conspiracy defendants filed the original lawsuits maliciously and without probable cause, manufactured the false letter, concealed it and, then, at trial introduced it and their perjured testimony into evidence; that, as to Franklin and Cisco, this conduct constituted a violation of their fiduciary duties to plaintiffs; that as a direct and proximate result of defendants' said conduct the adverse judgments were rendered, the judgment in favor of Franklin satisfied and plaintiffs suffered loss of property, severe physical and emotional distress and loss of income.

## ISSUES

Plaintiffs contend that they are entitled to recover damages on any of three theories: fraud, malicious prosecution and intentional infliction of emotional distress. In the prayer of their complaint, plaintiffs did not seek to vacate or set aside the judgments rendered in the consolidated actions. Although they did seek an injunction against enforcement of the Boothe judgment, they presented no argument to support relief on that theory in the court below, nor have they attempted to do so on appeal. ■ In one portion of their appellate brief, plaintiffs assert that they are not attempting to vacate or set aside the judgments, but, in another portion, they assert that the fraud alleged is sufficient to vacate the judgments in the consolidated actions and request leave to amend to allege favorable termination of the consolidated actions. Manifestly, plaintiffs could, in truth, make no such allegation. The most they could do is amend to request that the judgment in the consolidated actions be vacated. Their application for leave to amend should, of course, have been addressed to the trial court. (See *MacIsaac* v. *Pozzo, supra,* 26 Cal.2d at pp. 815, 816; 4 Witkin, Cal. Procedure (2d ed. 1971) at pp. 2821-2822.) Neverthe-

less, on this review of the judgment on the pleadings, the question before us is whether, disregarding imperfections of form which could be cured by amendment, the facts pleaded and judicially noticed entitle plaintiffs to any relief, including setting aside the prior judgments. (*MacIsaac* v. *Pozzo, supra,* 26 Cal.2d at pp. 813, 815; see also 4 Witkin, Cal. Procedure (2d ed. 1971) at pp. 2817-2822.)

### SETTING ASIDE THE PRIOR JUDGMENTS

Initially, we note that the Franklin judgment has been satisfied. However, a satisfaction of judgment may be vacated and the judgment revived under appropriate circumstances (see 5 Witkin, Cal. Procedure (2d ed. 1971) pp. 3575-3576 and authorities there cited), and we entertain no doubt that if sufficient grounds exist for vacating the judgment, the satisfaction of judgment may likewise be vacated.

A direct attack on an otherwise final, valid judgment by way of an independent action to set it aside (*Bennett* v. *Hibernia Bank,* 47 Cal.2d 540, 558 [305 P.2d 20]; see Rest., Judgments, § 11, com. a and § 12, com. f; 5 Witkin, Cal. Procedure (2d ed. 1971) pp. 3584, 3586, 3745) is permitted where it appears that the complaining party was fraudulently prevented from presenting his claim or defense in the prior action. (*United States* v. *Throckmorton,* 98 U.S. 61, 65-66 [25 L.Ed. 93, 95]; *Kulchar* v. *Kulchar,* 1 Cal.3d 467, 471 [82 Cal.Rptr. 489, 462 P.2d 17]; *Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, 18 [193 P.2d 728]; *Pico* v. *Cohn,* 91 Cal. 129, 133-134 [25 P. 970, 27 P. 537]; Rest., Judgments, § 118 et seq.; 5 Witkin, Cal. Procedure (2d ed. 1971) p. 3752 et seq.) This rule is based upon the important public policy that litigants be afforded a fair adversary proceeding in which fully to present their case. (*Jorgensen* v. *Jorgensen, supra.*) Such relief will be denied, however, where it appears that the complaining party ". . . has had an opportunity to present his case to the court and to protect himself from . . . any fraud attempted by his adversary." (*Kulchar* v. *Kulchar, supra,* 1 Cal.3d at p. 472; *United States* v. *Throckmorton, supra; Jorgensen* v. *Jorgensen, supra; Pico* v. *Cohn, supra;* Rest., Judgments, §§ 118, 126; 5 Witkin, Cal. Procedure (2d ed. 1971) p. 3768.) This rule is based upon the equally important public policy that there must be an end to litigation which underlies the doctrine of finality of judgments. (*Jorgensen* v. *Jorgensen, supra; Pico* v. *Cohn, supra.*)

"The terms 'intrinsic' and 'extrinsic' fraud or mistake are generally accepted as appropriate to describe the two different catagories of cases to which these policies of the law apply [citation]." (*Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d at p. 19.) In this context, the difference between extrinsic

and intrinsic fraud and the reason for the rule denying relief where the fraud is intrinsic is classically stated in *Pico* v. *Cohn, supra,* 91 Cal. at pages 133-134: "That a former judgment or decree may be set aside, and annulled for some frauds there can be no question; but it must be a fraud extrinsic or collateral to the questions examined and determined in the action. And we think it is settled beyond controversy that a decree will not be vacated merely because it was obtained by forged documents or perjured testimony. The reason of this rule is, that there must be an end of litigation; and when parties have once submitted a matter, or have had the opportunity of submitting it, for investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy. What, then, is an extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in the books are such as these: Keeping the unsuccessful party away from the court by a false promise of a compromise, or purposely keeping him in ignorance of the suit; or where an attorney fraudulently pretends to represent a party, and connives at his defeat, or, being regularly employed, corruptly sells out his client's interest. (*United States* v. *Throckmorton,* 98 U.S. 65, 66, and authorities cited.)

"In all such instances the unsuccessful party is really prevented, by the fraudulent contrivance of his adversary, from having a trial; but when he has a trial, he must be prepared to meet and expose perjury then and there. He knows that a false claim or defense can be supported in no other way; that the very object of the trial is, if possible, to ascertain the truth from the conflict of the evidence, and that, necessarily, the truth or falsity of the testimony must be determined in deciding the issue. The trial is his opportunity for making the truth appear. If, unfortunately, he fails, being overborne by perjured testimony, and if he likewise fails to show the injustice that has been done him on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy. The wrong in such case, is of course a most grievous one, and no doubt the legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse than the evil to be remedied. Endless litigation in which nothing was ever finally determined, would be worse than occasional miscarriages of justice; and so the rule is, that a final judgment cannot be annulled merely because it can be shown to have been based on perjured testimony; for if this could be done once, it could be done again and again *ad infinitum.*"

It is recognized, of course, that the appellations "extrinsic" and "in-

trinsic" "do not constitute . . . a simple and infallible formula to determine whether in a given case the facts . . . warrant equitable relief from a judgment. [Citations.] It is necessary to examine the facts in the light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case." (*Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d at p. 19; *Kulchar* v. *Kulchar, supra,* 1 Cal.3d at p. 473.) ■ Nevertheless, the California cases uniformly hold that the introduction of perjured testimony or false documents in a fully litigated case constitutes intrinsic rather than extrinsic fraud. (E.g., *Pico* v. *Cohn, supra,* 91 Cal. at pp. 133-134; *LaSalle* v. *Peterson,* 220 Cal. 739, 740 et seq. [32 P.2d 612]; *Smith* v. *Great Lakes Airlines, Inc.,* 242 Cal.App.2d 23, 27 [51 Cal.Rptr. 1]; *Robinson* v. *Robinson,* 198 Cal.App.2d 193, 196-197 [17 Cal.Rptr. 786]; see also *Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d at p. 18; Rest., Judgments, § 126.) ■ Likewise, in a litigated case the concealment or suppression of material evidence is held to constitute intrinsic fraud. (*Agnew* v. *Parks,* 172 Cal.App.2d 756, 766 [343 P.2d 118]; *Gerini* v. *Pacific Employers Ins. Co.,* 27 Cal. App.2d 52, 54-55 [80 P.2d 499]; *Cragie* v. *Roberts,* 6 Cal.App. 309, 315-316 [92 P. 97].)

In view of the allegations that Franklin and Cisco were their fiduciaries, plaintiffs seek support in the following statement in *Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d at page 19: "The latter policy [permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case] applies when a party's adversary, in violation of a duty arising from a trust or confidential relation, has concealed from him facts essential to the protection of his rights, even though such facts concerned issues involved in the case in which the judgment was entered. 'The failure to perform the duty to speak or make disclosures which rests upon one because of a trust or confidential relation is obviously a fraud, for which equity may relieve from a judgment thereby obtained, even though the breach of duty occurs during a judicial proceeding and involves false testimony, and this is true whether such fraud be regarded as extrinsic or as an exception to the extrinsic fraud rule.' (3 Freeman, Judgments (5th ed.), p. 2576; see, *Laun* v. *Kipp,* 155 Wis. 347 [145 N.W. 183, 5 A.L.R. 655].)"

Boothe, of course, was the other principal to the exchange transaction and owed plaintiffs no fiduciary duty. At least as to the Franklin judgment, however, it must be acknowledged that the facts of plaintiffs' case can be made to fit within the quoted language of *Jorgensen.* Plaintiffs alleged that they employed Franklin and Cisco as their real estate agents. ■ A real

estate agent owes his principal the same obligation of undivided service and loyalty as a trustee owes to his beneficiary, including the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision. (Civ. Code, § 2230; *Rattray* v. *Scudder*, 28 Cal.2d 214, 222-223 [169 P.2d 371, 164 A.L.R. 1356] and authorities there cited.) Plaintiffs have alleged not only that Franklin and Cisco were parties to a conspiracy to manufacture the false letter and give perjured testimony but, also, that they concealed the existence of the false letter, although no specific facts concerning such concealment are alleged.

*Jorgensen,* of course, was an action to set aside a divorce decree approving and adopting a property settlement agreement in which it was ultimately held, in review of a judgment on the pleadings, that the fraud or mistake pleaded was insufficient. The quoted language, therefore, while perhaps not dicta, cannot be considered more than an abstract discussion of the law. Neither the *Jorgensen* case itself nor the authorities cited in support of the quoted statement indicate the propriety of applying the statement to the facts of the case at bench which disclose a full, adversary trial in the original action. *Jorgensen,* of course, did not apply the quoted statement to the facts before it. The language quoted in *Jorgensen* from Freeman's work on judgments is supported in that treatise by citation to a number of cases including two California cases, *Campbell-Kawannanakoa* v. *Campbell,* 152 Cal. 201 [92 P. 184] and *Sohler* v. *Sohler,* 135 Cal. 232 [67 P. 282]. Both of these cases involved fraudulent conduct on the part of the personal representative in a probate proceeding by which the aggrieved parties were prevented from appearing or contesting and, thus, presented classical cases for equitable relief. (See 5 Witkin, Cal. Procedure (2d ed. 1971) pp. 3752-3753.) The same is true of each of the numerous cases cited in the *Jorgensen* opinion as illustrations of the quoted rule. (32 Cal.2d at p. 20.) In none of the cases was there a full adversary trial in the prior action or proceeding. *Laun* v. *Kipp,* 155 Wis. 347 [145 N.W. 183, 5 A.L.R. 655] cited in *Jorgensen* in support of the quoted statement. is of little authoritative value as respects the case at bench because, as pointed out in the decision itself, Wisconsin, at least at the time of that decision, did not adhere to the rule of *United States* v. *Throckmorton, supra,* 98 U.S. 61, but, rather, permitted a valid judgment to be set aside on a showing of perjured material testimony in the prior action. (145 N.W. at pp. 191-192.)

Moreover, although that factor was not therein discussed as meaningful, two of the leading California cases in which equitable relief was denied actually involved perjury or fraudulent conduct on the part of persons in a fiduciary relationship with the aggrieved party. In each case there was ap-

parently a full adversary trial in the prior action and, as stated, relief was denied. (See *Pico* v. *Cohn, supra,* 91 Cal. at p. 131; *Robinson* v. *Robinson, supra,* 198 Cal.App.2d at pp. 194-195.)

The policy considerations underlying the doctrine of finality of judgments are today at least as important as, if not more important than, ever. In view of that fact and in view of *Pico, Robinson* and the other cases uniformly denying equitable relief on allegations of perjured testimony and false documents, and in the absence of a more definite imperative from our high court, we do not deem it appropriate to apply the quoted language of *Jorgensen* to a case in which there was a full, adversary trial in the prior action. Were we to do so, a precedent would be established opening the door to multiplicity of litigation in every case involving a fiduciary in which the fiduciary prevailed.

## Fraud and Malicious Prosecution

Since the facts constitute insufficient basis for setting aside the prior judgments, neither can they serve as the basis for an action for damages on a theory of fraud or malicious prosecution. ■ The prior judgments having been rendered by a competent court with jurisdiction of the parties and subject matter in accordance with procedural due process constitute valid, final judgments. (Rest., Judgments, §§ 4-10.) A valid, final judgment is not subject to collateral attack. (*Miller* v. *City of Bakersfield,* 256 Cal. App.2d 820, 823 [64 Cal.Rptr. 469]; Rest., Judgments, § 11, com. b.) ■ An action for damages for malicious prosecution or fraud constitutes a collateral attack on the judgments in the prior actions. (E.g., *Roos* v. *Harris,* 203 Cal. 201, 202 [263 P. 225] [malicious prosecution]; *Plum* v. *Becket,* 120 Cal.App. 507, 511 [7 P.2d 1111] [malicious prosecution]; *Gerini* v. *Pacific Employers Ins. Co., supra,* 27 Cal.App.2d at p. 55 [fraud]; Rest., Judgments, § 11, com. a; 5 Witkin, Cal. Procedure (2d ed. 1971) p. 3587.) In order to recover damages for fraud or malicious prosecution, plaintiffs would be required to prove in this action that they were not indebted to Franklin and Boothe as a result of the original transaction or that there was no probable cause for defendants to believe that they were so indebted. But the fact of such indebtedness is now conclusively established by the final judgments in the consolidated actions, and it is the very purpose of the doctrine of finality of judgments to preclude relitigation of that fact. (*Pico* v. *Cohn, supra,* 91 Cal. at pp. 133-135; *Roos* v. *Harris, supra,* 203 Cal. at p. 202; see *Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d at p. 18.)

With respect to their claim for relief on the theory of fraud, plaintiffs rely heavily upon the following statement found in *Carpenter* v. *Sibley,*

153 Cal. 215, 217-218 [94 P. 879]: "Respondents then argue that the only fraud which will avail the plaintiff to overcome the presumption of probable cause established by the conviction is extrinsic fraud which would justify an action to set aside the judgment. Here respondents fall into error. The rule that only extrinsic fraud may be made the basis of an action to set aside a judgment is a rule founded in necessity. It is to the interest of the state that there should be an end to litigation. If it were permitted that a litigant could maintain an action to overthrow a judgment upon the ground that perjured testimony had been employed against him, or upon any other ground than extrinsic fraud, litigation would have no end. (*Pico* v. *Cohn,* 91 Cal. 129, [25 Am.St.Rep. 159, 25 Pac. 970, 27 Pac. 537].) But this is very far from saying that because the law denies to a litigant this particular form of redress for such an injury, it denies him any redress whatsoever. Certainly if a man has procured an unjust judgment by the knowing use of false and perjured testimony, he has perpetrated a great private wrong against his adversary. If that judgment is in the form of a judgment of criminal conviction, it would be obnoxious to every one's sense of right and justice to say that because the infamy had been successful to the result of a conviction, the probable cause for the prosecution was thus conclusively established against a man who had thus been doubly wronged. Therefore, while it may be true, that the fraud alleged in this complaint [perjured testimony] is not such a fraud as would support an action for the setting aside of a judgment, it is still a fraud which will support an action for a remedy for the private wrong thus committed. So we find it laid down that the general rule now is, 'that if the declaration or complaint shows a conviction of the plaintiff, yet if it be averred that the conviction was procured by fraud, perjury or subornation of perjury, or other unfair conduct on the part of the defendant, the presumption of probable cause is effectually rebutted.' [Citations.]"

We must confess some difficulty in understanding the quoted statement. If, as plaintiffs contend, the statement is taken to mean that an action in fraud for damages may be maintained notwithstanding the nature of the fraud is insufficient to set aside the prior judgments, it is contrary to the doctrine of finality of judgments as applied in *Roos* v. *Harris, supra,* 203 Cal. at page 202; *Miller* v. *City of Bakersfield, supra,* 256 Cal.App.2d at page 823; *Gerini* v. *Pacific Employers Ins. Co., supra,* 27 Cal.App.2d at page 55; and *Plum* v. *Becket, supra,* 120 Cal.App. at page 511. (See also Rest., Judgments, § 11, com. b, *supra.*) Moreover, if the quoted language is so interpreted, it constitutes only a dictum. The question before the court in *Carpenter* was not whether a cause of action in fraud was stated but whether the facts alleged were sufficient to support an action for malicious prosecution. The plaintiff there had suffered a criminal conviction allegedly pro-

cured by perjured testimony, but the conviction had been *reversed on appeal* and *subsequently dismissed* (153 Cal. at p. 217). The problem confronting the court was whether the inference or presumption of the existence of probable cause resulting from the original conviction (see *Gause* v. *McClelland,* 102 Cal.App.2d 762, 764-765 [228 P.2d 91]; 2 Witkin, Summary of Cal. Law (7th ed. 1960) p. 1269) could be overcome by a showing that the conviction, later reversed and dismissed, was procured by perjured testimony. (See 3 Witkin, Cal. Procedure (2d ed. 1971) pp. 2249-2250.) Thus, *Carpenter* cannot be considered authoritative with respect to the question whether a judgment procured by perjury and false evidence is subject to collateral attack by a subsequent action for damages for fraud.

With respect to their theory of malicious prosecution, plaintiffs recognize that they are unable to plead the element of favorable termination of the prior proceeding (*Babb* v. *Superior Court,* 3 Cal.3d 841, 845 et seq. [92 Cal.Rptr. 179, 479 P.2d 379]; *Jaffe* v. *Stone,* 18 Cal.2d 146, 149 [114 P.2d 335, 135 A.L.R. 775]; see 3 Witkin, Cal. Procedure (2d ed. 1971) p. 2250). ▪ They urge, however, that in the case where the prior adverse adjudication has been procured by perjury and the introduction of a false document, the plaintiff in a subsequent malicious prosecution action should be excused from pleading and proving favorable termination.

First, they argue that this is the rule established by *Carpenter* v. *Sibley, supra,* 153 Cal. 215 and *Norton* v. *John M. C. Marble Co.,* 30 Cal.App.2d 451 [86 P.2d 892]. In this they are mistaken. As previously pointed out, in the *Carpenter* case the plaintiff's prior criminal conviction had been reversed on appeal and subsequently dismissed (153 Cal. at p. 217), and the question confronting the court was whether the inference or presumption of probable cause arising from the original conviction (see *Gause* v. *McClelland, supra,* 102 Cal.App.2d at pp. 764-765; 2 Witkin, Summary of Cal. Law (7th ed. 1960) *supra,* p. 1269) could be overcome by a showing that the original conviction, later reversed and dismissed, was procured by perjured testimony. (See 3 Witkin, Cal. Procedure, *supra,* pp. 2249-2250.) It was held that it could.

The problem in *Norton* was substantially identical to that in *Carpenter.* The plaintiff seeking damages for malicious prosecution had previously been adjudged guilty of contempt of court. Subsequently, the adjudication of contempt was vacated on habeas corpus. (30 Cal.App.2d at p. 453.) The question was raised whether the presumption of probable cause arising from the original adjudication could be overcome by a proper allegation of intrinsic fraud in its procurement. Relying upon *Carpenter,* the court said that it could (30 Cal.App.2d at p. 455) but held that the complaint con-

tained no sufficient allegation that the original adjudication was procured by fraud. (30 Cal.App.2d at p. 455.)

Thus, neither *Carpenter* nor *Norton* stand for the proposition that a plaintiff in a malicious prosecution action is excused from pleading and proving favorable termination by the fact that the prior adjudication was procured by intrinsic fraud. *Carpenter* holds and *Norton* indicates that, when the plaintiff *is able* to plead and prove favorable termination, he may overcome the inference or presumption of the existence of probable cause arising from a preliminary adjudication, later reversed, vacated or set aside, by showing that such conviction was procured by intrinsic fraud. (See 3 Witkin, Cal. Procedure (2d ed. 1971) *supra,* pp. 2249-2250.)

Alternatively, plaintiffs invite us to re-examine the tort of malicious prosecution and to hold that in a situation such as that presented by the case at bench, the plaintiff is excused from pleading and proving or the defendant is estopped from denying favorable termination of the prior proceeding. They contend that other jurisdictions have established such a rule, citing *Mannisto* v. *Rainen Furniture Company* (Mo.App. 1956) 295 S.W.2d 841, *Goldstein* v. *Sabella* (Fla. 1956) 88 So.2d 910 [58 A.L.R.2d 1418], *Cobbey* v. *State Journal Co.* (1907) 77 Neb. 626 [113 N.W. 224], and *Lockett & Williams* v. *Gress Mfg. Co.* (1911) 8 Ga.App. 772 [70 S.E. 255]. As an intermediate appellate court, of course, we are powerless to accept plaintiffs' invitation. Not only are we bound by *Roos* v. *Harris, supra,* 203 Cal. 201, but our Supreme Court although in an entirely different context, has only recently reaffirmed the requirement that a plaintiff in a malicious prosecution action plead and prove favorable termination and pointed out the important practical and policy considerations supporting the requirement. (*Babb* v. *Superior Court, supra,* 3 Cal.3d at pp. 846-848.)

In this connection, we note that while the theory most often cited as underlying the requirement of favorable termination is that it tends to indicate the absence of probable cause (see *Babb* v. *Superior Court, supra,* 3 Cal.3d at p. 846, *Jaffe* v. *Stone, supra,* 18 Cal.2d at p. 150), the requirement is, in a case such as this, founded upon another, and perhaps more significant, basis, to wit, the doctrine of finality of judgments and the public policy underlying that doctrine. Thus, as observed in *Babb*: "Furthermore, the rule tends to eliminate unnecessary litigation, for a defendant who loses in the principle action will not institute a malicious prosecution suit, since the adverse judgment operates to establish conclusively that the plaintiff had probable cause." (3 Cal.3d at p. 847; also *Roos* v. *Harris, supra,* 203 Cal. at p. 202.)

Moreover, we have examined the foreign cases cited by plaintiffs and find that they do not support the rule contended for. Except for *Mannisto,* in each of the cited cases the prior proceedings had terminated favorably to the plaintiff in the malicious prosecution action, and these cases stand for precisely the same proposition as *Carpenter* v. *Sibley, supra,* 153 Cal. 215 and *Norton* v. *John M. C. Marble Co., supra,* 30 Cal.App.2d 451. To the extent the *Mannisto* case may have supported the rule contended for by plaintiffs, it has been expressly repudiated by the Supreme Court of Missouri on the precise point in issue. (*McMahon* v. *May Department Stores Company* (Mo. 1963) 374 S.W.2d 82, 91.)

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

 If plaintiffs' purported action for intentional infliction of emotional distress constitutes a collateral attack upon the prior judgments, it, like the purported causes of action for fraud and malicious prosecution, is precluded by the doctrine of finality of judgments. The doctrine of finality of judgments, however, rests upon principles of *res judicata* (see *Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d at p. 18), and we think sound principles of *res judicata* indicate that plaintiffs' cause of action for intentional infliction of emotional distress does not constitute a collateral attack upon the judgments in the consolidated actions. Unlike fraud and malicious prosecution, recovery on the theory of intentional infliction of emotional distress would not require proof that plaintiffs were not indebted to Franklin and Boothe on the original transaction or that there was not probable cause for so believing. It would require only proof that the letter was a false document and that the testimony concerning it was perjured. While it is indicated in *Pico* v. *Cohn, supra,* 91 Cal. at p. 135 that the *bona fides* of the evidence in the prior action is necessarily determined therein, the authors of the Restatement of Judgments take the position that evidentiary facts are not *res judicata* ". . . even though the determination of the facts in issue is dependent upon the determination of evidentiary facts." (Rest., Judgments, § 68, com. p and illus. 14.)

Nevertheless, the recognition of a cause of action for damages on the theory of intentional infliction of emotional distress on the facts of this case[1] would largely subvert the notion that false evidence must be discovered and

---

[1] It is well established that one who attempts to collect a debt by outrageous means substantially certain to result in severe emotional distress may be held liable notwithstanding the actual existence of the debt. (*Bowden* v. *Spiegel, Inc.,* 96 Cal.App.2d 793 [216 P.2d 571]; *Vargas* v. *Ruggiero,* 197 Cal.App.2d 709 [17 Cal.Rptr. 568]; see Prosser, Law of Torts (3d ed.) pp. 49-50; Note, 17 Hastings L. J. 369.) The attempt to collect an alleged debt by means of perjured testimony and a false document constitutes conduct every bit as outrageous as that of the defendants in *Bowden* v. *Spiegel, Inc., supra,* and *Vargas* v. *Ruggiero, supra.*)

exposed in the first trial to avoid multiplicity of litigation (see *Pico* v. *Cohn, supra,* 91 Cal. at pp. 133-134; *Kulchar* v. *Kulchar, supra,* 1 Cal.3d at p. 472; *Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d at p. 18). In almost every case in which the prior judgment was procured by the adverse party through perjured testimony or a false document, severe emotional distress would be a substantially certain result. Thus, in virtually every such case, the doctrine of finality of judgments could be avoided merely by predicating liability in the second action on the theory of intentional infliction of emotional distress rather than malicious prosecution.

There is another substantial impediment to the maintenance of an action for intentional infliction of emotional distress on the facts of the case at bench. ■ To impose liability on that theory it must appear that the defendant's conduct was unprivileged. (*State Rubbish etc. Assn.* v. *Siliznoff,* 38 Cal.2d 330, 337 [240 P.2d 282]; *Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376, 394 [89 Cal.Rptr. 78]; *Agostini* v. *Strycula,* 231 Cal.App.2d 804, 808 [42 Cal.Rptr. 314]; Rest.2d Torts, § 46, com. g.)

With exceptions not here pertinent, subdivision 2 of section 47 of the Civil Code provides, in respect to the tort of defamation, that a publication made in the course of a judicial proceeding is absolutely privileged. (See generally, *Albertson* v. *Raboff,* 46 Cal.2d 375, 378-381 [295 P.2d 405].) ■ Although the instant case is not an action for defamation, the privileges recognized in connection with the tort of intentional infliction of emotional distress are similar to those recognized in defamation actions. (See *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at p. 395; *Agostini* v. *Strycula, supra,* 231 Cal.App.2d at p. 808; cf. Rest. 2d Torts, § 46, com. g, *supra.*) Indeed, in *Agostini* v. *Strycula, supra,* 231 Cal.App.2d at page 808, it was held that an absolute privilege analogous to that set forth in Civil Code section 47, subdivision 2 is applicable to an action for intentional infliction of emotional distress.

■ Underlying the recognition of this privilege is the important public policy of affording the utmost freedom of access to the courts. (See *Albertson* v. *Raboff, supra,* 46 Cal.2d at p. 380; Prosser, Law of Torts (3d ed.) p. 797.) ■ The privilege is accorded not only to parties but to witnesses, even where their testimony is allegedly perjured and malicious. (See *Agostini* v. *Strycula, supra,* 231 Cal.App.2d at p. 808; Prosser, Law of Torts, *supra.*) "The resulting lack of any really effective civil remedy against perjurers is simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say." (Prosser, Law of Torts (3d ed.) *supra,* p. 797.)

## CONCLUSION

Thus, with considerable regret and dissatisfaction, we conclude that the facts alleged and judicially noticed do not entitle plaintiffs to any relief.[2] Paraphrasing the words of Chief Justice Beatty in *Pico* v. *Cohn, supra,* 91 Cal. at page 134, we recognize that the wrong in this case is a most grievous one, and we should be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse. Reluctance on the part of witnesses to testify for fear of subsequent harassment by unfounded claims of perjury or endless litigation in which nothing was ever finally determined would be worse than occasional miscarriages of justice.

The judgment is affirmed.

Kerrigan, Acting P.J., and Gabbert, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 23, 1972. Mosk, J., was of the opinion that the petition should be granted.

---

[2]Although not pleaded nor urged by plaintiffs, in our endeavor to determine whether the facts entitle plaintiffs to any relief, we have considered whether a case is stated for abuse of process. We have concluded that the facts do not present a proper case of abuse of process. (Cf. *Goland* v. *Peter Nolan & Co.,* 2 Cal.2d 96, 98 [38 P.2d 783]; see 3 Witkin, Cal. Procedure (2d ed. 1971) p. 2252.)

We also note that the recognition of a cause of action for either malicious prosecution or intentional infliction of emotional distress in the case at bench would raise serious problems revolving around the statute of limitations. Both such actions would normally be governed by the one-year period prescribed in Code of Civil Procedure section 340, subdivision 3. It is arguable, however, that in substance, the underlying wrong is a form of fraud and that, possibly, the applicable statute of limitations would be Code of Civil Procedure section 338, subdivision 4. (See 2 Witkin, Cal. Procedure (2d ed. 1970) p. 1176 and cases there cited.)